## ROY McGUGAN v. STATE.

No. A-10531.  March 13, 1946.

(167 P. 2d 76.)

John W. Tillman and Fred A. Tillman, both of Pawhuska, for plaintiff in error.

Randell S. Cobb, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, P. J.   The defendant, Roy McGugan, was charged in the district court of Osage county with the crime of rape in the first degree; was tried, convicted, and sentenced to serve 15 years in the State Penitentiary, and has appealed.

The brief of defendant is devoted mainly to the contention that the evidence is insufficient to sustain the conviction.   However, in connection with this assignment of error, counsel argue that the defendant was denied a fair and impartial trial because of the admission of certain evidence over the objection of counsel for defendant.

The prosecuting witness was a young Indian woman. She testified that on June 1, 1943, she was standing on the highway leading from Fairfax to Pawnee, trying to catch a ride to Pawnee. That the defendant came along in his automobile, stopped, and she got into his car. She then testified as follows:

"A. Well, when I was in the automobile he asked me where I was going and I told him Pawnee and he said, 'Well, how much would you give me if I was to take you clear down to Pawnee,' I said, 'Well, I am a poor girl, I don't have no kind of money. I said if I had I would not start walking and he said, 'Well," he said, 'haven't you got anything else,' and I said, 'No, sir, I don't have anything else.' 'Well,' he said, 'We will make a deal on that,' he said, 'I said, 'Well'—and then he said I have to go up here to a house and see a fellow,' he said, 'and then from there I will take you on.' I said, 'No sir, I would rather stay on the—excuse me—people, but I stutter—you will have to overlook it; and said, 'Well, I said, ' I would rather stay on the paved, road.' I said, 'You let me off on the corner;' and he started turning off. * * * Q. How far did you ride with him on the main highway? A. I don't exactly know the length, but it was about—well, about two miles and a half or something like that. And he wasn't driving fast either. Q. Now tell the jury and the court if he turned his automobile off the highway. A. He did, he turned his automobile off the highway and went west. Q. Did you do anything or say anything to him when he turned off the highway? A. Well, I told him I was going to get off there and when I insisted he kept saying no, 'No, I will take you on after we get there;' but anyway, I turned the key off, and then after the car would not stop I threw the key on the—I jumped up and said there is your key and run; and then he tackled me from behind."

The witness further testified that she and the defendant started scuffling and he twisted her arm and made her return to the car with him. That he drove

the car down near a creek and forced her to get out. That he continued to hold her arm and made her cross a barbed wire fence which he held down with his foot. That they went around a little grove of trees and up by some high weeds where he accomplished the act of sexual intercourse with her. That after he had finished he went to the creek to wash and she went back to his car and got her package and went to the highway. That shortly after she got to the highway, she flagged down a pick-up truck with a boy and an old man in it and had them take her to town. That she went to the police station and reported what had occurred.

Over the objection of counsel for defendant, the prosecuting witness testified that she had married one Lawrence Hawkins in 1938, and that at the time of the alleged commission of the crime, he was serving overseas with the armed forces, and further testified that at the time of the trial he was a patient in the Bane Hospital at Washington, D. C.

Jim Kastl, a Fairfax policeman, testified that the prosecutrix came into the police station during the noon hour on June 1, 1943, and said she had been raped. Over the objection of counsel for defendant, the officer was allowed to detail the conversation which he had at that time with the prosecutrix. His testimony as to the statements made by the prosecutrix to him and another policeman on that occasion covered about three pages in the record and was admitted by the trial court on the theory that it was a part of the res gestae.

Lee Reddick, another police officer of Fairfax, testified to substantially the same facts as related by the witness Kastl. The officers testified on cross-examination that they arrested the defendant there in Fairfax shortly

after they had returned from making an examination of the place where the act is alleged to have occurred. The officers further testified that, at the place where the act is alleged to have occurred, some twigs had been broken from some bushes and a "sort of bed had been made." In further testifying about this particular point, the officers said that it looked as if some one had broken some twigs or had pulled up some little bushes and had laid them on the bare ground where the prosecutrix said the act occurred.

The defendant testified in his own behalf and admitted picking up the prosecutrix at the place which she had testified. He admitting committing the sexual act with the prosecutrix, but stated that it was done with her consent and was purely a commercial proposition. He swore that after he picked up the prosecutrix she said she wanted him to drive her to Pawnee and told him she had everything but money to give him to take her to Pawnee. That he turned off on the dirt road and she objected to committing the act at that place, but wanted him to take her on to Pawnee first. That they had an argument there and she grabbed the keys from his car and started to run. That he caught her and took the keys away from her. That she got back into the car with him and he drove on down the road about one-quarter of a mile, across a creek. That she then agreed to commit the act with him if he would pay her for it, to which he agreed. That he then held up the barbed wire fence while she went under it. That they walked a little way around the edge of the creek to some high weeds where they would be out of sight of the highway and that she broke some twigs to make her a bed before she lay down, so that she would not get dirty.

There were several witnesses who testified to the de-

fendant's good reputation in the community. Also, there were some witnesses who testified concerning conversations had with the prosecutrix in which it was alleged that she agreed not to appear if the defendant would pay her some money.

Counsel contend that the testimony of the prosecutrix to the fact that she had a husband who was overseas at the time the act occurred was a determining factor and weighed heavily with the jury in their consideration of the guilt or innocence of the defendant. In their motion for new trial, the defendant alleged that prosecutrix had sworn falsely about being married to Lawrence Hawkins and introduced testimony by a brother-in-law of the alleged husband of the prosecutrix, who testified that the prosecutrix married Lawrence Hawkins, in South Dakota, on the Indian Agency, in 1938, and that they lived together about two months, at which time she ran off with another man and never lived with the said Hawkins after that date. That Hawkins was not in a government hospital in Washington as testified by prosecutrix, but was in Italy. That, later, after she separated from Hawkins, she commenced living with an Indian by the name of Franklin No Ear, and, while living with him in 1941, gave birth to a son. Another Indian, DeMoin Feathers, swore that he had lived with the prosecutrix as husband and wife for a time after January 1, 1939. There was considerable testimony offered in support of the motion for new trial, on the ground of newly discovered evidence, to show that the prosecutrix had lived with various men and was receiving a government allotment of pay for her child from a man other than the man Hawkins, who she testified was her husband. Also included in the evidence was testimony concerning her being drunk the night after the act is al-leged to have occurred, in which she made statements con-

cerning the alleged crime different from her testimony at
the trial.

Ordinarily, we would say that the testimony con-
cerning the fact that the prosecutrix was married and the
whereabouts of her husband would be admissible, or, at
least, it would be so immaterial that it could not vitally
affect the issue of the guilt or innocence of the defendant,
but, when considering all of the peculiar circumstances
surrounding this alleged incident, it is easily seen that
such evidence might have weighed heavily against the de-
fendant in this case.

We think the testimony of the officers in which they
detailed all of the statements made to them by the prose-
cutrix was inadmissible as hearsay.

In the recent case of Frazee v. State, 79 Okla. Cr. 224,
153 P. 2d 637, this court held:

"The term 'res gestae' is not subject to any exact
definition which will fit all cases, but in a general way
it may be defined as the circumstances, facts, and declara-
tions that grow out of the main facts, and shed light
upon it and tend to explain it and made at a time so near,
either prior or subsequent to main act, as to exclude idea
of deliberation or fabrication."

"A fixed measure of time or distance from main
occurrence cannot be established as a rule to determine
what should be part of res gestae, but each case must
necessarily depend upon its own circumstances to establish
whether facts offered were a part of same continuous
transaction."

"Whether hearsay evidence is admissible as a part of
res gestae is a matter within trial court's discretion, and
trial court's ruling will be upheld on appeal unless there
appears an abuse of discretion."

In the body of the opinion, this court quoted from

the case of Cook v. State, 27 Okla. Cr. 215, 226 P. 595, as follows:

"Hearsay evidence may be admissible as a part of the res gestae. One of the recognized exceptions to the rule that hearsay evidence is not admissible is where spontaneous statements or exclamations are made by an injured person, declaring the circumstances of the injury, where such statements are made immediately after the injury or during such indefinite time thereafter as the stress of pain, fear, or excitement prevents the reflective faculties of the narrator to control, so that the utterances are spontaneous and in direct response to the sensations produced by the physical shock or mental excitement. The utterances, to come within the exceptions to the rule, must be under the uncontrolled domination of the senses, so near in point of time that considerations of self-interest and reflection could not have been fully restored."

In determining whether the court abused its discretion in admitting the testimony of the officers concerning the statements by the prosecutrix, the evidence shows, after the act was committed, the prosecutrix returned to defendant's automobile, took a package therefrom, and went to the highway over a quarter of a mile away where she caught a ride two and one-half or three miles back to Fairfax. The owner of the truck which carried her back to town testified at the trial that he picked up the prosecutrix about 125 yards north of the crossroad on the highway. The man testified that she sat in front with him and he did not pay very much attention to her. That she was awfully quiet and he did not notice anything unusual about her conduct or her appearance. That she did not say a half dozen words on the way to town and did not say anything at all about having been raped. This witness was subpoenaed to appear by the state, and we think his testimony shows that, if the prosecutrix had been outraged, that she had recovered control of her feel-

ings, and that anything she said after she was taken back to town could not be said to have been a spontaneous utterance produced by the physical shock or mental excitement of the alleged crime. If the prosecutrix had run to the highway and had stopped the car immediately after the act is alleged to have occurred, had given the appearance of being in a shocked condition. and had related the circumstances of the crime, such testimony would probably have been admissible as a part of the res gestae, but, instead of doing that, she had walked 125 yards up the highway, after she had arrived at the highway from the place where the crime is alleged to have been committed. She got into the automobile to ride to town, and made no mention of having been attacked. Under such circumstances, we think the admission of this evidence by the police officers as to her statements was an abuse of discretion on the part of the trial court. When it is considered that this is a case depending entirely for a conviction upon the fact that the prosecutrix resisted to the utmost, but that her resistance was overcome by the force of the defendant, this court must necessarily weigh all of the circumstances in determining whether the court erred in the admission of certain testimony. The jury itself was undecided for a long period of time. Twice they reported to the court they they were dead-locked, but, after having the testimony of the prosecutrix read to them, they finally returned a verdict of guilty and assessed the minimum punishment.

Upon a consideration of all the facts and circumstances in this case, including the admission of the evidence herein above discussed, and further considering the facts disclosed in the evidence introduced in support of the motion for new trial, this court feels that the evidence is such that the defendant is entitled to a new trial,

where the hearsay testimony of the officers will not be admitted in evidence and the evidence will be confined to facts which are material only to the guilt or innocence of the accused.

For the reasons herein above stated, the judgment of the district court of Osage county is reversed and remanded for a new trial consistent with the views herein expressed.

BAREFOOT, J., concurs. DOYLE, J., not participating.