## LOUIS ROBINSON v. STATE.

No. A-10802.   Sept. 8, 1948.
Rehearing Denied Nov. 17, 1948.
(197 P. 2d 517.)

268

H. M. Shirley, of Coalgate, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., and W. H. Parker, County Atty., of Atoka, for defendant in error.

BAREFOOT, P. J.  Defendant, Louis Robinson, was charged in the district court of Atoka county with the crime of rape in the first degree; was tried, convicted and sentenced to serve a term of 25 years in the State Penitentiary, and has appealed.

Counsel representing defendant in this appeal did not appear in the trial of the case. Defendant's brief does not present any question of law, but contends that the facts are not sufficient to sustain the judgment and sentence; and that counsel appointed were not given proper time to prepare the case for trial; and that the judgment and sentence is excessive.

These questions require a brief statement of the facts, as revealed by the record.

Counsel for defendant state that this case was tried on May 14, 1946, just before the primary election, and that politics were at a fever heat at that time. It is further stated: "the judge had opposition, the county attorney was opposed, and there were three candidates in the sheriff's race, one of them being a brother-in-law of the defendant."

We have carefully examined the record and we find nothing therein to indicate that any political issue was in any way involved, and as far as this court is concern-

ed the case will be considered only in the light of the law and the evidence.

It appears that the prosecuting witness, Helen Davis, age sixteen years, had been employed in New Orleans, La., at Woolworth's department store for a period of about two years. While working there she met Catherine Lane, a young lady whose home was in Atoka, and who also worked at the department store. These two young ladies decided to come to Oklahoma, to visit at the home of Miss Lane for a short time, with her family, and then go to Tulsa to secure work. They visited in Atoka about a week at the home of Miss Lane and her relatives. During that time they went to some dances, and drank beer at various places. A night or two before the alleged crime was committed, Helen Davis checked in at a hotel in Atoka, and testified that she had planned to leave the next day for Tulsa.

On Saturday night, March 23, 1946, both of the girls took a taxi to Coalgate, Okla., to attend a dance. From Coalgate they went to Lehigh, where they consumed two or three bottles of beer. They were alone, unescorted. They returned to Atoka in a taxicab about 1:30 Sunday morning, March 24, 1946. They first went to the cafe at the bus station, and decided not to spend the night at the hotel, but to get a cab driver whom they knew to take them to the home of one of Miss Lane's relatives, about a mile and a half east of Atoka. Miss Lane remained at the bus station, and the prosecutrix got in a taxi and went to the home of Raymond Wilson, a taxi driver, to get him to drive them to the home of the relative in the country. When prosecutrix returned to the bus station with Raymond Wilson, the defendant appeared in his truck, and had a talk with Raymond Wilson. Raymond Wilson went into the cafe, presumably

to get Catherine Lane. According to the testimony of the prosecutrix, defendant immediately forced her into his truck, threatening to kill her if she made an outcry, and then at a fast rate of speed, drove south of town a mile or so, and then turned off on a country road, where he stopped his truck. She testified that defendant was driving at such a fast rate of speed she was unable to get out of the truck, but that she tried to do so. When defendant stopped she got out of the truck, but the defendant also got out and forced her back in the truck and forcibly and against her will raped and ravished her.

The defendant then drove back to town and stopped his truck at the filling station next to the bus station, and let the prosecutrix out. She entered the bus station, and according to the evidence of Catherine Lane and Roy Kyle, the night policeman at Atoka who was in the bus station at the time, she was in a very nervous and disturbed condition and crying a great deal. The incident was reported to Officer Kyle and another officer, who got in communication with the sheriff of Atoka county. The prosecutrix was immediately taken to the hospital, where she spent the night. The next morning she was examined by Dr. Cotton, who testified that she had had intercourse recently; that her private parts were badly torn and bruised, and that her hymen was broken. He also testified to a bruised place on her leg. The panties which she was wearing were delivered to the sheriff on Sunday, March 24th, and were introduced in evidence. They were torn and bloody.

The evidence on the part of the state also revealed that defendant had come into a cafe in Atoka about two days prior to this time, where prosecutrix and Catherine Lane and her sister Donajean Lane were sitting at the counter, and the defendant remarked to one of

the Lane girls that the prosecutrix had pretty eyes and hair. To this remark she had replied that he was silly.

Catherine Lane testified and corroborated the testimony of prosecutrix in all details leading up to the commission of the crime, and of her return to the cafe, and of her being in a nervous condition and crying, and of her reporting what had happened to night policeman Roy Kyle.

Roy Kyle testified to prosecutrix entering the bus station, and that "she was crying and upset." He testified that she made a report to him, and he talked with Sheriff McBride over the phone, and took prosecutrix to the hospital; that the nurse talked to Dr. Cotton and was told to put prosecutrix to bed and he would be right down.

Sheriff L. O. McBride testified that he received a call from night policeman Roy Kyle about 2 a. m., and that he did not consider it any use to go down until the next morning. He then called the hospital. Prosecutrix left the hospital about 12 o'clock noon on Sunday, the 24th, and came to his office. She was accompanied by Catherine Lane. The court sustained an objection to any conversation between the sheriff and the prosecutrix. The sheriff was permitted to testify that prosecutrix was requested to remove her "panties" and leave them at his office to be used as evidence. On the afternoon of March 24th, (Sunday) he, in company with prosecutrix Helen Davis and Catherine Lane, went out on the Wapanucka road for the purpose of locating the place where prosecutrix had reported she had been assaulted. After turning off the main highway, he found a place "where there had been a car pulled out to the side of the road and stopped and pulled back in the

road." He then drove down the road approximately 100 yards where another car had pulled out on the Bermuda grass, and there found a condrum lying on the grass which he said had apparenty been recently used in intercourse. He returned to Atoka and in a few days in company with the county judge of Atoka county took prosecutrix to Tecumseh, to the state training school for girls, where she remained until brought to Atoka to testify at the trial of the case. Her friend Catherine Lane was permitted to go to Tecumseh and remain there until the trial.

Defendant Louis Robinson testified that he had seen the prosecutrix with the Lane girls several days before the alleged crime at a cafe in Atoka, as testified to by the prosecutrix and the Lane girls. He was kidding with them, and told Donajean Lane that "your little girl-friend has got pretty brown eyes," and she said, "You are silly." And that was about all that was said at that time. That he saw prosecutrix again on the next night at the same place, with Catherine Lane, in Atoka, and they were drinking beer, but he did not talk with them.

On the morning of March 24th, Sunday, at about 1:30 o'clock, he was sitting with his wife in his truck, parked between the bus and filling stations. He saw prosecutrix and Raymond Wilson get out of a taxi, and that they were "standing there by a post, talking." He and his wife got out of the truck and went in the bus station and ate supper. His wife was talking to some girl and he "went out and talked to Raymond Wilson." He testified:

"Q. What happened? A. He said something about going somewhere if he could get Catherine, and said, 'Would you like to go,' and I said 'Yes', and said 'I will

go,' and stood there and he said, 'I am going to see if I can get a cab' and I said, 'I got a truck' and I said, 'Let's get in the truck' to Helen and she and I got in and said, 'Reckon Raymond is not coming' and we drove around to the other station and got Raymond and brought him out. Q. Where did you park? A. Right where they grease cars at the other station. Q. That would be in front? A. Yes, sir. Q. Then you got out and came around to the taxi station? A. Yes, sir. Q. Which is around on the south side of the Partin filling station? A. Yes, sir. Q. Then what happened? A. Well, he talked to her a little bit, and said, 'I can't go on account of Catherine,' and said, 'You all go ahead' and I said, 'What are you going to do, feed her?' and he said 'no', and I backed out and took off. Q. Did she make any resistance? A. No, sir. Q. Did you drive very fast? A. No, I didn't. Q. Which way did you go? A. Went out by the airport, north and west on the side of the road. Q. How long were you gone? A. about 45 minutes. Q. When you got out to the place you stopped, was there any scuffle or any disagreement between you and she? A. No, sir, there wasn't. Q. Did you have intercourse with her? A. Yes, I did. Q. Did you use any rubber? A. Yes. Q. What did you do with the rubber? A. Throwed it away—over the fence. Q. Do you know whether she knew you used a rubber? A. No, I don't. Q. About how long did it take you to go out there and back? A. I judge about 5 minutes to go and back—run out there and back. Q. How far did you go? A. About a mile and a quarter out there. Q. When you came back where did you park? A. Right where I started from—right by the filling station by the bus station. Q. What did she do? A. Got out and went in the bus station. Q. What did you do? A. I went to the other door and got my wife and went home. Q. Your wife still there? A. Yes, sir. Q. Did you tell your wife about the trip you made, or where you had been? A. No, sir. Q. Did you tell her where you were going when you started? A. No, sir. Q. She didn't know where you were going? A. No, sir. Q. And you didn't tell

her? A. No, sir. Q. Do you know about Helen crying when she got out of the car? A. No, sir. Q. Was she crying? A. No, sir, wasn't when she got out of my truck. Q. What did she say when she got out? A. She said, 'I will see you again.' "

Defendant denied that he raped prosecutrix by force.

Several witnesses were placed on the stand by the defendant who testified to having seen prosecutrix and Catherine Lane at several beer taverns in and around Atoka, during the week they were there, but no one testified to any misconduct on their part, other than drinking beer or talking to some boy. Both the prosecutrix and Catherine Lane positively denied being at some of the places where some of the witnesses testified they had seen them.

Some testimony was introduced by the defendant in an attempt to show that prosecutrix had attempted to secure money from defendant for the purpose of leaving town, and abandoning the prosecution. An attorney, who had formerly represented the defendant, testified that she had come to his office and asked to be paid a $1,000, and that he had jokingly told her his client was poor, and that he could not raise over $250, and that prosecutrix left his office. She testified that a certain party had asked her to go to the office of the attorney, and that she was offered $250, which she refused, saying "she did not want or need any money." The wife of defendant also testified that prosecutrix offered to take money and leave, but prosecutrix testified that the wife offered her money to leave, and her testimony was corroborated by Catherine Lane.

This evidence could only be considered with reference to the credibility of the witness, and this was a

question for the jury, under all the facts and circumstances of the case.

The facts with reference to the court refusing to grant a continuance in this case are: Defendant was arrested March 24, 1946. Complaint was filed before a justice of the peace, and defendant was bound over to the district court on the charge of rape at the preliminary hearing. He was represented by an attorney of his own choice. Information was filed in the district court of Atoka county on March 26, 1946. Defendant was arraigned on April 23, 1946, entered a plea of not guilty and his case was set for trial for May 7, 1946. On May 7th the case was continued until May 13th. On that date, defendant filed a motion for continuance, and it was overruled the same day. This motion was filed and presented by an attorney other than the one who represented him at the preliminary hearing. The grounds set up in the motion were:

"That he was represented by an attorney who he had employed at the preliminary, but that said attorney did not expect this case to be tried at this term of court and was busy preparing for a murder case which had been set for trial at this term; that when said attorney learned the state would insist on the trial of this case he informed this defendant and the court that it would be necessary for him to withdraw from this case on account of not having time to prepare for the trial; that on the 23rd day of April, 1946, this court permitted said attorney to withdraw from the defense of this case; that on the 2nd day of May, 1946, this court appointed Gilbert W. Daney and C. B. Memminger, attorneys at law, to defend this defendant at a trial set for Tuesday, May 7th, 1946; that neither of said attorneys were present in court when the said appointment was made, but were later notified; that neither of said attorneys were familiar with the facts involved and that defendant had never

discussed the case with either of them; that said attorneys had previous appointments with other clients, some from out of the city; that between the date of appointment and the date set for trial there were only three days, to-wit: Friday, May 3rd, Saturday May 4th, and Monday May 6th; that on Monday May 6th this defendant was injured and laid up and not available for conference with his attorneys; that he was at a hospital at Sherman, Texas, on Thursday May 9th for an X-ray to determine the extent of his injury and did not again see his said attorneys until Friday, May 10th; that the Judge of this court talked over the telephone with the doctor first called to see this defendant and continued the hearing of this case until Monday, May 13th, 1946.

"Defendant further states that in order to properly prepare for trial herein he requires more time to confer with his said attorneys and to contact witnesses, some of whom do not live within Atoka County, and to make certain investigations relative to the prosecuting witness without the State of Oklahoma, she being a stranger here."

This motion for continuance was sworn to by defendant, but no other affidavits or proof was offered, and, as above stated, the motion was overruled.

Under the often-repeated holding of this court that the granting of a motion for continuance is within the sound judicial discretion of the trial court and such action will not be set aside unless there is an abuse of such discretion, it cannot be said that this case should be reversed by reason of the overruling of the motion for continuance.

Tit. 12 O. S. 1941 § 667 provides:

"The court may, for good cause shown, continue an action at any stage of the proceedings upon terms as may be just; * * *."

And section 668 provides:

"A motion for a continuance, on account of the absence of evidence, can be made only upon affidavit, showing the materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it, and where the evidence may be; and if it is for an absent witness, the affidavit must show where the witness resides, if his residence is known to the party, and the probability of procuring his testimony within a reasonable time, and what facts he believes the witness will prove, and that he believes them to be true. If thereupon, the adverse party will consent that on the trial the facts, alleged in the affidavit shall be read and treated as the deposition of the absent witness, or that the facts in relation to other evidence shall be taken as proved to the extent alleged in the affidavit, no continuance shall be granted on the ground of the absence of such evidence."

See Lane v. State, 65 Okla. Cr. 192, 84 P. 2d 807; Hiatt v. State, 67 Okla. Cr. 372, 94 P. 2d 262; Abby v. State, 72 Okla. Cr. 208, 114 P. 2d 499, 115 P. 2d 266; Foster v. State, 79 Okla. Cr. 183, 152 P. 2d 929; Andrews v. State, 84 Okla. Cr. 104, 179 P. 2d 491; Fields v. State, 85 Okla. Cr. 439, 188 P. 2d 231.

It will be observed that many of the provisions of the statute were not complied with in the instant case. This defendant was arrested on March 24, 1946, made bond and was released. He was not tried until May 13, 1946, and the case had been continued on at least two different dates. The record reveals that defendant was represented by able counsel, and that he was financially able to employ counsel. There is nothing in the record to show that any witness who was acquainted with the facts failed to appear and testify in this case. After defendant was tried and convicted, and filed a motion for new trial, he gives the name of only one witness who he

claims would have testified in his favor. The testimony
which it is stated he would give is in direct conflict with
the testimony of the defendant given at the trial of the
case, and nothing appears to show that due diligence
was used in attempting to secure the evidence of this
witness, who had been subpoenaed by the state, and was
present at the trial but not used. Counsel for defend-
ant had the opportunity to consult this witness, and if
they had deemed his evidence would have been beneficial
to defendant, he could have been placed upon the wit-
ness stand.

The evidence of the prosecutrix and the defendant
as to whether the act was by force or voluntary is, of
course, contradictory, but the evidence of the prosecu-
trix is corroborated in many respects. The often repeat-
ed rule of this court is that where there is competent evi-
dence in the record from which the jury could reasonably
conclude that defendant was guilty as charged, this court
will not interfere with the verdict even if there is a sharp
conflict in the evidence, and different inferences may be
drawn therefrom, since it is the exclusive province of
the jury to weigh the evidence and determine the facts.
Lewis v. State, 59 Okla. Cr. 77, 56 P. 2d 425; Sadler v.
State, 84 Okla. Cr. 97, 179 P. 2d 479; Jackson v. State,
84 Okla. Cr. 138, 179 P. 2d 924.

The circumstance of the finding of the condrum by
the sheriff on the day following the commission of the
crime at the place identified by the prosecutrix as that
where the crime was committed, was a fact which could
be argued to corroborate the testimony of the defendant
that the act was voluntary. But this was a question of
fact for the jury.

The only case cited by defendant to uphold his con-
tention is Johnson v. State, 84 Okla. Cr. 368, 182 P. 2d

777. An examination of that case reveals that it is in no way applicable to the facts here presented.

The evidence revealed that the prosecutrix was sixteen years of age at the time the alleged crime was committed. Tit 21 O. S. 1941 § 1111 defines rape as follows:

"Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances: * * *

"2nd. Where the female is over the age of sixteen years and under the age of eighteen, and of previous chaste and virtuous character. * * *

"4th. Where she resists but her resistance is overcome by force and violence.

"5th. Where she is prevented from resistance by threats of immediate and great bodily harm, accompanied by apparent power of execution."

Tit. 21, § 1114, defines rape in the first and second degrees, as follows:

"Rape committed by a male over eighteen years of age upon a female under the age of fourteen years, or incapable through lunacy or unsoundness of mind of giving legal consent; or accomplished with any female by means of force overcoming her resistance, or by means of threats of immediate and great bodily harm, accompanied by apparent power of execution, preventing such resistance, is rape in the first degree. In all other cases rape is of the second degree."

Section 1115 prescribes the punishment for rape in the first degree:

"Rape in the first degree is punishable by death or imprisonment in the penitentiary, not less than fifteen years, in the discretion of the jury, or in case the jury fail or refuse to fix the punishment then the same shall be pronounced by the court."

And section 1116 fixes the punishment for rape in the second degree:

"Rape in the second degree is punishable by imprisonment in the penitentiary not less than one year nor more than fifteen years."

The court fully instructed the jury on the question of rape as defined by the statute, and the degrees of rape, and the punishment for rape in the first and second degrees, as provided by the statute. He also instructed them under subdivision 2 of section 1111, above quoted defining rape where it provides: "Where the female is over the age of sixteen years and under the age of eighteen, and of previous chaste and virtuous character"; and instructed the jury that if they found the defendant guilty under this section, it would be rape in the second degree, and the punishment would be as provided by section 1116 (above quoted) by imprisonment in the penitentiary not less than one year nor more than fifteen years. However, the jury by its verdict found the defendant guilty of rape in the first degree, and assessed the punishment at 25 years in the penitentiary.

We have carefully examined the facts as shown by the record, and the cases heretofore decided by this court as to whether the judgment and sentence of 25 years is excessive and justice requires a modification of the same.

There is nothing in the record to indicate or show that this defendant had ever before been convicted of any crime. He testified in his own behalf, and the state had an opportunity to cross-examine him as to whether he had been previously convicted. He is a married man, and has a family. It seems to be one of those cases where one permits his passion to overcome his better judgment. Repentance comes after the act is committed, and he

sees the folly of his way. It is a bitter experience, but a punishment the law demands for one's failure to obey the laws. The prosecutrix in this case was a young girl who came out into the world as the result of a broken home. The evidence does not reveal that she had stepped over the brink, but she was probably on the ragged edge. She was away from the influence of home and parents. She was staying up late at night, visiting beer parlors, dance halls, and having a "fine time," according to her viewpoint, and the almost sure result of this course of conduct on her part, if continued, was bound to bring about serious and disastrous results. This court realizes that what we may say will probably not be heeded by the youth of today, but we dare not fail to do our duty in cautioning them to "stop, look and listen" before it is too late.

The minimum punishment for rape in the first degree is fifteen years in the State Penitentiary. This is a long term, but the Legislature of this state, in its wisdom and in an effort to protect the young womanhood of the state who make an effort to protect themselves, has so provided. If the jury believed that prosecutrix was sixteen years of age and under eighteen years, and there is no evidence to the contrary, and that she was of previous chaste and virtuous character and voluntarily consented to the act, the jury would have been bound to convict the defendant of rape in the second degree under his own testimony. However, the jury in defendant's home county found that the rape was by force, and found defendant guilty of rape in the first degree.

We are of the opinion that under all the facts and circumstances of this case, justice demands that the judgment and sentence of the district court of Atoka county should be modified from a term of 25 years in the

State Penitentiary, to a term of 15 years in the State Penitentiary, the minimum punishment for rape in the first degree. As so modified, the judgment and sentence is affirmed.

JONES and BRETT, JJ., concur.