Reuben C. HENDERSON, Plaintiff in Error,

.v.

The STATE of Oklahoma, Defendant in Error.

No. A–13295.

Court of Criminal Appeals of Oklahoma.

July 17, 1963.

Rehearing Denied Sept. 11, 1963.

**934**

Earl K. Howe, Tulsa, for plaintiff in error.

Charles Nesbitt, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., for defendant in error.

JOHNSON, Judge.

Reuben C. Henderson, hereinafter referred to as defendant, was convicted by a jury in the district court of Tulsa County, of the crime of manslaughter in the first degree, and sentenced to serve 25 years in the state penitentiary. Appeal to this Court has been perfected.

The information charged that the defendant, with his father Hosea Henderson, conspired to and did effect the death of one Rayford Lee Glover.

The undisputed facts are that the said Glover was shot in a beer tavern in the city of Tulsa on March 21, 1962, and that he subsequently died from such wound. This defendant and his father entered the tavern where Glover was, and Hosea Henderson shot Glover.

Other than this, the evidence is highly conflicting. The State introduced three witnesses, the owner of the tavern, a waitress, and a man who worked there part time, who were in the tavern at the time of the homicide. All three of these witnesses testified that this defendant came into the tavern ahead of his father; and two of them said that defendant said to his father, "here he is", or "there he is", and walked over to Glover, who was sitting with his back to the door, and struck him on the head with the barrel of a gun. That Glover raised up out of his chair and grabbed defendant, and that Hosea Henderson thereupon shot Glover. All three of these witnesses testified that after the shot, Hosea Henderson, with his gun still in his hand, looked around and said, "Anybody here don't like it?"; then to his son, the defendant, "Come on, let's go."

There were other customers or people in the tavern, but none of the witnesses (including the defendant and his father) could name any of them.

The defendant testified substantially as follows: That he was at his father's home

on the night of this difficulty; that his father got home from work about 9:45 p. m., ate supper, "fooled around, looked at television, and pretty soon asked me did I feel like driving to Okmulgee." Defendant, his father and one Emma Specks, the admitted common law wife of the father, started to Okmulgee. They stopped at the Lewis Walker tavern for the father to get some cigars. Defendant's father got out of the car, which was parked across the street from the tavern, went in, and the defendant followed him. Just as the defendant stepped inside the door he saw Glover, who he stated was dancing. That immediately on seeing Hosea, Glover stopped dancing, rushed over and struck Hosea, knocking him down. That his father had made no move toward Glover. That he did not see his father hit Glover, and that he himself never did strike him. That defendant did not own a gun, had never carried or fired one, and did not have one on that night. That his father had two pistols, and as he was falling down from the blow by Glover, Hosea pulled a gun and shot Glover. That Glover was down over his father when he was shot.

Dr. Leo Lowbeer testified for the State. He said that he performed an autopsy on Glover, and that "the cause of death was perforation of the brain and of the brain stem by a bullet." He testified that, "the pertinent facts from the outside were that he had a bruise, or what appeared to be a bruise, on the forehead in the middle and a little bit to the left, and within that bruise, which extended to the hairline, was a small bullet wound of entrance, just above the hairline." He further testified that the bullet ranged downward. He stated that deceased had a funnel-shaped wound one and a half inches above a line drawn between the upper border of the ears, and four and a half inches above the posterior hair line.

Hosea Henderson corroborated the defendant in every part of his testimony. He stated that he had two guns on him when he went into the tavern; that he was not acquainted with Glover and when Glover hit him in the tavern and as he was falling, he "chopped" Glover over the head with the barrel of a gun he pulled from a scabbard on his belt with his right hand as Glover was falling, and from the position of witness on the floor, with his back up against the bar, he shot Glover with his left hand with a gun he took from his overcoat pocket.

We might state here that Hosea Henderson had previously been charged with murder in connection with this same incident, tried, convicted and sentenced to life imprisonment.

The record discloses that after the defendant and his father left the tavern, they got in their car (in which Emma Specks was waiting), went to Boynton, and then to Okmulgee. Neither Hosea nor his wife drove a car, and this defendant was driving for them. They reached Okmulgee and Hosea and his wife, with a nephew driving, started on a return trip to Tulsa. This defendant remained in Okmulgee.

Hosea and his wife were arrested on the street back in Tulsa about 3:20 the morning of March 22, 1962 before they reached their home; and this defendant was arrested in Okmulgee about 3:45 the morning of the same day, and by the Okmulgee officers turned over to the Tulsa county authorities.

From the record and brief of the defendant, it seems that on February 21, 1962, one month prior to the date involved herein, this defendant had trouble with Glover, and was struck in the head by Glover with the handle of a shovel. He was taken to a hospital, where a bone fragment was removed, and his wound dressed. Hosea Henderson was called at the place of his employment and told of his son's trouble, went to the hospital, and thence to the place of the fracas, looking for his son's assailant. When he arrived, someone asked him if he were "R. C.'s daddy", and when he admitted that he was, the person knocked him down, and he suffered a cut on his head, went to the hospital and had five stitches taken in his scalp. As he fell a gun fell

from his possession, was picked up by Glover and turned over to a policeman. Hosea did not see the man who struck him, and did not know who it was. Counsel for defendant states that the attacker in both instances was Rayford Lee Glover.

We have carefully read, reread and studied the record in this case, as well as the briefs of the defendant and the State. Counsel for defendant has filed an exhaustive brief. In his petition in error he cites sixteen assignments of error, all of which had been presented to the trial court in the motion for new trial. In his brief he argues each of these assignments, and under assignment No. 1 sets out errors numbered from "a" to "q" inclusive. The attorney made an extensive oral argument before this Court. It is our opinion that he did not overlook any possible error favorable to his client.

Counsel's first assignment of error is: "There were errors of law occurring over the objection of the defense, and exceptions were saved." These errors are listed as (a) to (q) inclusive, as stated.

■■■ Counsel complains (a) that on voir dire the court would not allow him to tell the jury the nature of the case, or comment on the matter. The voir dire is not reported in the record, and we must assume that the rulings of the court were correct. However, we have held that the form of questions put to prospective jurors on voir dire examination is a matter within the discretion of the trial court, and will not be interfered with where no prejudice is shown. 22 O.S.A. § 659; Payne v. State, Okl.Cr., 276 P.2d 784; 50 C.J.S. Juries § 276 d, note 34, p. 1058.

■■■ Counsel states (b) that during his opening statement the court cautioned him not to testify, and that he limit himself to what he expected to prove, and not engage in argument at that time. No authorities are cited in support of this contention of error. We have carefully read counsel's statement, and are of the opinion that the court was justified in his admonition, and that no error was committed by the court.

■■■ Counsel complains (c) that he was not permitted to cross examine the policeman who first arrived on the scene, as to what the witnesses told him, claiming that this was admissible as res gestae. Defendant cites no authorities, but we are of the opinion that under the holdings of this Court the facts in each case will largely determine the admissibility of such evidence, and that the same should be left to the discretion of the trial court. In McGugan v. State, 82 Okl.Cr. 130, 167 P.2d 76, this Court said:

"Whether hearsay evidence is admissible as a part of res gestae is a matter within trial court's discretion, and trial court's ruling will be upheld on appeal unless there appears an abuse of discretion."

We hold that the court did not abuse its discretion in this matter.

■■■ (d) This claim of error, that the court erred in sustaining an objection to questions of defense counsel asked of one of the police officers, is frivolous—the defense not saving an exception to the court's ruling.

■■■ Counsel complains (e) of the introduction of certain pictures introduced by the State, one of which shows a large spot, presumably blood, on the floor of the tavern where this homicide occurred. We hold that the court did not err in admitting this and other photographs. Boling v. State, Okl.Cr., 341 P.2d 668; Pate v. State, Okl.Cr., 361 P.2d 1086; Cody v. State, Okl.Cr., 361 P.2d 307, 84 A.L.R.2d 997.

■■■ In (f) and (g) counsel complains of the court questioning the witnesses. We have often held that the trial court has the right to question witnesses, especially for the purpose of bringing out some material point for the consideration of the jury, but we have stated that it is not the best practice, and that the court should be very careful in questioning witnesses. Stacey v. State, 79 Okl.Cr. 417, 155 P.2d 736. We can not conclude after a consideration of the entire record, that the trial court by

his actions showed prejudice against either the accused or his counsel.

▮ In (h) defendant complains of the court allowing the State to impeach its own witness, Emma Specks, stating that, "there was an abuse of discretion on the part of the court, highly prejudicial to appellant, when it became obvious that this State's witness was to be charged with perjury."

The State had called this witness, and she refused to answer any material questions, not remembering anything about which she was questioned, either by the State or the defense. She did not remember being with the defendant and his father on the night in question, did not know anything about stopping the car at Lewis Walker's tavern, did not know anything about going to Boynton and Okmulgee with them, or being arrested on returning to Tulsa. On cross examination, when asked if she remembered being picked up by the police with Hosea Henderson and Emmett Dean on the night in question, she did not remember, did not remember being taken to the police station, and did not remember being questioned by the police. She stated that she could not read or write, and could not sign her name. On re-direct examination the assistant county attorney asked her:

"Q Mrs. Specks, how much of these checks do you receive each month? A Is that got anything to do with this? The Court: You answer the question, Mrs. Specks. Q Mr. Latimer: Strike it, Your Honor, we withdraw the question. Q (Mr. Latimer) You do know enough not to answer that, don't you? A All right, you— I draw—Mr. Latimer: That is all right, you don't have to answer. Mr. Howe: I object to those remarks, Your Honor. The Court: The question has been withdrawn. Proceed."

Mr. Howe took an exception to this action of the court. The court then excused the jury, and examined Mrs. Specks with reference to a statement purportedly initialled and signed by her. She denied signing the statement, denied that it was her signa-

ture attached thereto, and denied that she had written her initials on the first sheet of the statement. The court then instructed her to remain in the hall until he could ascertain whether or not she was telling the truth. This was all outside the hearing of the jury. Counsel for defendant cites no authority in support of his contention.

▮ In McCombs v. State, 74 Okl.Cr. 87, 123 P.2d 301, the Court said:

"Where a party has placed a witness upon the stand believing that he will testify to a given state of facts by reason of testimony given or statements made, and the witness then testifies to a different state of facts injurious to the party calling him and in conflict with his previous statements or testimony, the party placing such witness upon the stand may impeach his testimony. This may be done upon the ground of surprise and to explain the placing of the witness upon the stand and to counteract the injurious effect of his testimony."

See also Chambless v. State, 90 Okl.Cr. 423, 214 P.2d 947, and Stanley v. State, 94 Okl.Cr. 122, 230 P.2d 738.

Under the circumstances of this record, we consider this assignment of error without merit.

▮ Errors (i), (j), (k), (l), (m), (n), (o) and (p) concern the rulings of the court in the admission and rejection of evidence. We have carefully read this record, and reread it with particular attention to that part of the record complained of by the defendant in these assignments.

The trial judge is as much a judge for the defendant as for the State, and is supposed to sit fairly and impartially on the rights between the State on the one side, and the defendant on the other. An examination of the record herein shows that the trial judge was very firm in exercising complete control of the proceedings. He was harsh with both counsel for the State and counsel for the defendant. Trial courts are necessarily vested with a large

amount of discretion in controlling the issues that are to be tried of the guilt or innocence of the accused, and this Court has often held that a judgment of conviction will not be reversed on the ground of improper admission or exclusion of evidence, unless after an examination of the entire record it appears that there has probably been a miscarriage of justice, or a substantial violation of some constitutional or statutory right of the defendant; and to determine this issue, the Court must consider the question as to whether the appellant is guilty or innocent of the offense charged. Fowler v. State, 8 Okl.Cr. 130, 126 P. 831; White v. State, 34 Okl.Cr. 424, 246 P. 1114; Keltner v. State, 52 Okl.Cr. 150, 3 P.2d 451.

Having read the entire record in this case, we fail to find where the trial court committed any material error, either in the reception or rejection of testimony.

Assignment (q) is that "the court erred in overruling objections in the State's closing argument and subsequent wrongful argument."

Only the closing argument of the State is shown in the record. The opening statement of the State, and the argument of the defense are not shown.

Particularly complained of is the following from the closing argument of the assistant county attorney:

"There is one thing in here that could have been said, and I submit to you if you had that story you would not be in that jury room five minutes deliberating this case.

"Mr. Howe: Your Honor, I am going to object to that as outside the record.

"The Court: Overruled.

"Mr. Howe: The inference. Exception."

There is very little doubt but that the assistant county attorney in his zeal to convict the defendant exceeded the bounds of proper commentary, and went outside the record. This Court cannot approve of

the statement of which complaint is made. Nevertheless, in the light of the entire record, the error is not sufficient to work a reversal in the case, because the evidence of defendant's guilt is overwhelming.

Defendant cites the early case (1897) of Watkins v. United States, recorded in 1 Ind.T. 364, 41 S.W. 1044, wherein the court says:

"As this is the first capital case which has been tried in the United States courts in the Indian Territory, we have very carefully considered all the errors assigned, even at the risk of being regarded as tedious."

That case involved the selection of the jury, the instructions of the court, and the assignment of error based upon the following remarks made by the counsel for the government in his closing argument to the jury:

"By your verdicts at this term of the court you have said that the slanderer must keep a civil tongue in his mouth; and here, in the Indian Territory, men's property is safe from the clutches of the thief, and a woman's reputation is safe from the poison of the slanderer."

The court further said:

"We are of the opinion that the remarks complained of and to which exception was taken should have been withdrawn from the jury, yet we are further of the opinion that they did not influence the minds of the jury in making up their verdict. Counsel, however, on the part of the people and on the part of the defendant also, should be careful in all cases to confine their remarks to the jury strictly to the facts and to the law of the case. It is unprofessional to go outside the record for the purpose of exciting sympathy or arousing prejudice in the minds of the jury; and whenever the privileges of counsel are abused, to the manifest prejudice of the accused, it would be reversible error not to

withdraw the objectionable language from the consideration of the jury."

See Workman v. State, 83 Okl.Cr. 245, 175 P.2d 381, and cases cited.

 Counsel for the defendant alleges: The second specification goes to the court overruling the demurrer of the defendant, and in overruling the defense motion to dismiss and direct a verdict for the defendant.

The Attorney General in his brief answers this contention by citing the applicable rule, as stated in State v. Williams, Okl.Cr., 307 P.2d 163, as follows:

"Where evidence is conflicting, sufficiency thereof presents question for determination of jury, and trial court should not direct verdict or sustain demurrer to evidence if there is proof tending reasonably to sustain allegations of information."

 Defendant's third specification of error is: "The court erred in overruling defendant's motion for a new trial presented with record made and testimony."

This contention goes to the alleged wrongful conduct of the bailiff, and the court in permitting the members of the jury to telephone their respective families that they would be late in returning home. At the hearing on the motion for new trial, the court permitted the defendant to call the bailiff, who was sworn and testified with reference to the matters complained of, as did the assistant county attorney. After a full hearing on the contentions of the defendant, the trial court overruled the motion for new trial. From reading this record, we are of the opinion that the court went to great pains to conduct the trial in an orderly and proper manner, and we can not say that there was an abuse of discretion in the matter complained of.

We are inclined to agree with the Attorney General that defendant's specifications 4, 5, 6, 7, 8, 9, 10, 11, 12, 13 and 14 are all merely reiterations of the propositions that counsel advances in his specification 1 and all the subdivisions thereunder, all

of which we have attempted to consider herein.

 Defendant's 15 contention is that the court erred in the "overruling of the defendant's motion for a directed verdict at the end of the evidence; that the evidence failed to show a conspiracy on the part of the defendant and his co-defendant and failed to show any concerted action between the defendant and the co-defendant and failed to show that this defendant either condoned, consented to, or acquiesced in the actions of his co-defendant, and said evidence and testimony wholly failed to show that this defendant either condoned, consented to, or acquiesced in the action of his co-defendant, and said evidence and testimony wholly failed to constitute the crime as alleged in the information and shown by the evidence considering the testimony and evidence as a whole."

 In Hutchman v. State, 61 Okl.Cr. 117, 66 P.2d 99, this court said:

"The courts of this country have often held that it is not necessary that a conspiracy be proved by direct testimony, in fact, conspiracies are seldom susceptible to such proof. It is often proved by circumstances. We call attention to the case of Mathews v. State, 19 Okl.Cr. 153, 198 P. 112, 117 wherein the court says:

"'A conspiracy, leading up to the commission of the crime charged, need not be established by direct evidence, but may and generally must be proved by a number of independent acts, conditions, and circumstances. The very existence of a conspiracy is generally a matter of inference deduced from certain acts of the persons accused, done in pursuance of an apparently criminal or unlawful common purpose.

"'It is not necessary to prove that the conspirators came together and actually agreed to pursue their purpose by common means, one performing one part and another another. If one concurs in a conspiracy, no proof

of an agreement to concur is necessary to make him guilty.'"

And see Oxendine v. State, Okl.Cr., 350 P.2d 606.

Discussing this contention of error, the defendant states: "It is fairly certain that the State will rely on Wilson v. State, 32 Okl.Cr. 139, 240 P. 155."

The facts in the two cases are quite similar, in that a father and son were involved in a murder charge. Jim Wilson, while in a cafe, heard, or thought he heard someone call him an approbrious name. He left the cafe, went to his home and returned with his son, Harvey Wilson. Another father and son, J. T. Gaither and his son J. F. Gaither, were in the cafe, and when J. T. Gaither told Jim Wilson that he was mistaken, no one had called him the name, Harvey Wilson opened fire and killed both the Gaithers. In passing on the question of conspiracy, the Court said:

"There is no direct proof that the defendant and his son, Harvey Wilson, agreed with each other to go to the cafe and assault the person presumed to have insulted the defendant, but a conspiracy may be proven by the acts and conduct of the conspirators; that is to say, by circumstantial evidence. * * *

"The responsibility of a conspirator is not confined to the accomplishment of the particular purpose of the conspiracy, but extends to collateral acts and offenses incident to and growing out of the purpose intended."

The conviction of the father of manslaughter was confirmed. See also Bruton v. State, Okl.Cr., 305 P.2d 1045.

The evidence in the case at bar is such that, if believed by the jury, was ample to justify the verdict of guilty of manslaughter in the first degree.

Defendant's concluding contention is:

"The defendant would point out that certainly no cloak of innocence went with him throughout this trial until he was proven guilty, but the impression was conveyed throughout the trial that he was guilty to a certainty, leaving nothing to the jury other than the assessment of his punishment."

We have time and again held that whenever there is evidence in the record from which the jury could rationally conclude that the defendant is guilty, we would not reverse a conviction, unless from the record it appears that the defendant had been deprived of some substantial right during the trial. Robinson v. State, 87 Okl.Cr. 267, 197 P.2d 517; Norton v. State, 56 Okl.Cr. 333, 39 P.2d 162; Taylor v. State, 95 Okl.Cr. 98, 240 P.2d 803; Sasser v. State, Okl.Cr., 309 P.2d 1090.

The jury had the issues in the case fairly and clearly submitted to them by the instructions of the Court. No objections or exceptions were taken to any of the instructions, and no written instructions were offered by the defendant. The jury heard the testimony of the witnesses, and saw their demeanor while upon the witness stand, and were in far better position to determine who should be believed than are the members of this Court. This case was tried before a judge of exceptional ability, impartiality, fairness and courage. He saw and heard the witnesses, and he approved of the verdict of guilty. This Court can only inspect the cold record, while the judge and jury who tried the case saw and heard the living witnesses. In the absence of anything in the record indicating bias or prejudice upon the part of the judge or jury who tried the case, or that they were influenced by improper considerations, we cannot disturb the verdict upon the ground that it is not supported by the testimony. It is a well settled rule of law that if there is competent evidence to support the conviction, this Court will not weigh the sufficiency of the evidence. Bruning v. State, 63 Okl.Cr. 1, 72 P.2d 393.

We have searched this record diligently for such errors, and while the record presents several irregularities bordering upon

reversible error, we fail to find any errors of such consequence as to justify this Court in saying that the defendant did not have a fair and impartial trial. The record is replete with such minor irregularities as are often attendant upon a hard-fought and closely contested trial. None of them are of such importance that this Court would feel justified in reversing this case for a new trial. There is no reason to believe that upon a second trial an intelligent and honest jury would arrive at any other verdict than that of first degree manslaughter.

This Court is of the opinion that the case should be affirmed, but that on account of the errors contained in the record, the sentence of 25 years should be modified to 15 years in the State Penitentiary, and as so modified, the judgment and sentence of the district court of Tulsa County is affirmed.

BUSSEY, P. J., and NIX, J., concur.