**Thomas Athion STERLING, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A-18156.**

Court of Criminal Appeals of Oklahoma.

Sept. 4, 1973.

**402**

Robert S. Durbin, Asst. Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., John C. Williams, Legal Intern, for appellee.

BUSSEY, Judge:

Appellant, Thomas Athion Sterling, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County, Case No. CRF–72–1684, for the offense of Robbery with Firearms, his punishment was fixed at a term of not less than twenty-five (25) years nor more than sixty (60) years imprisonment and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial Bob Randolph, a Tulsa County Deputy Sheriff, testified that on September 5, 1972, he was working as a part-time security guard at Safeway Store # 484 at Denver and Edison in Tulsa; that at approximately 9:00 p.m. he was checking the rear of the store at closing time to see if there were any more customers in the store. He observed two subjects on the back aisle in the back of the store, one of whom he identified in court as defendant. Defendant asked him the price of ginger ale. He informed defendant that he would have to check with the clerk, whereupon the defendant produced a .38 caliber pistol and pointed it at his stomach. Defendant told his companion to get his gun and advised Randolph to not do anything or he would kill him. Defendant ordered him to accompany them to the front of the store. As they arrived at the cashier's booth, another employee, Charles Taylor, arrived at the same time. Defendant's companion stuck the Deputy Sheriff's gun into Taylor's ribs and ordered him to get over there. Another employee, Dean Morris, came up and was ordered by defendant to get into the booth and get the money. Morris explained to defendant that he couldn't, whereupon the defendant replied "Who can." Deputy Randolph yelled to William Pierce to come over to the booth. As Pierce approached the booth, defendant pointed a gun at him and ordered him to get the money. Pierce went into the booth, opened the safe and took a brown paper sack from defendant in which to put the money. Defendant ordered them to go to the back of the store. As they started down the aisle, both the defendant and his companion ran for the exit doors. Defendant's companion ran into the "in door" which had been locked. They both then went out the "out door."

Charles Taylor testified that he was employed at Safeway Store #484 on the evening in question. At approximately 9:00 he was getting off work and started walking up toward the check cashing booth to punch out. He observed Bob Randolph with two persons behind him, one of whom he identified in court as defendant. Defendant's companion put a gun in his ribs and told him to stand still. His testimony of what happened thereafter did not differ substantially from the testimony of Deputy Randolph. He further testified that he observed defendant in the store about thirty minutes before the robbery when he bought some orange juice and on another occasion approximately one month earlier.

Dean Morris testified that he was employed at the Safeway Store on the evening in question. His testimony as to the robbery did not differ substantially from the testimony of witness Randolph and witness Taylor. He identified the defendant as being one of the robbers.

William Pierce testified that he was employed as the assistant manager for the Safeway Store on the evening of the robbery; that at approximately 9:00 p. m. Deputy Randolph called him to the check cashing booth. He observed two men, one of whom he identified in court as defendant, standing by the booth with guns. Defendant handed him a paper sack and told him to fill it up. He took the bag, went in the check cashing booth and put the money into the bag.

For the defense Frank Friday testified that defendant's father had entrusted defendant to him before he died when defendant was four years old; that on September 5, 1972, defendant came to his house sometime between 5:00 and 6:00 p. m. Defendant had been drinking and laid down on the couch and watched T.V. Defendant did not leave his house until the following day. On cross-examination he testified that the information contained in State's Exhibit 1 in which the defense of alibi was claimed stating that defendant was in the company of one Wendell Walker at the time of the offense was not correct.

Officer McSherry testified that he investigated the robbery of the Safeway Store and lifted latent prints from a door of the Safeway Store.

Officer Nuttall testified that he compared the prints lifted by Officer McSherry with those of defendant and that they were not identical.

Defendant testified that he had been in the Safeway Store on previous occasions but was not in the store on September 5, 1972. He further testified that he was at home at 311 E. Independence during the time of the robbery in the company of Mr. and Mrs. Frank Friday. In cross-examina-

tion he admitted that he was not in the company of one Wendell Walker as alleged in the notice of intent to claim alibi, but that he had been in the company of a man whose first name he knew as Wendell earlier that day. He further admitted that he was not in the company of "a dude called Fuzzy" on the evening of the robbery but that he had told someone earlier that he was. He explained that he lied to the police officers because they were harassing him during the interrogation.

In rebuttal Detective Ron Vause testified that on September 7, 1972, he interrogated defendant at the Tulsa Police Department. Defendant was advised of his constitutional rights and he executed a rights waiver. He denied that defendant was harassed in any manner. Defendant stated that on September 5, 1972, he was with a "dude by the name of Wesley and that they were in and out of the Big 10 Pool Hall most of the evening." Defendant denied being with a man by the name of Fuzzy. He testified that while he was questioning defendant that his sister was present. Defendant's sister attempted to establish an alibi for him by saying "Tommy, you remember that you were with us when this robbery happened." (Tr. 149) In response to this statement, defendant nodded his head.

■ Defendant asserts several propositions of error, none of which we deem necessary to discuss in detail. We specifically observe that it was improper to use State's Exhibit 1, the notice of alibi, to impeach witness Friday and that the assistant district attorney made certain improper remarks, only one of which was objected to during the course of his closing argument. In Henderson v. State, Okl.Cr., 385 P.2d 930, we stated:

"We have searched this record diligently for such errors, and while the record presents several irregularities bordering upon reversible error, we fail to find any errors of such consequence as to justify this Court in saying that the defendant did not have a fair and impartial trial.

The record is replete with such minor irregularities as are often attendant upon a hard-fought and closely contested trial. None of them are of such importance that this Court would feel justified in reversing this case for a new trial. There is no reason to believe that upon a second trial an intelligent and honest jury would arrive at any other verdict than that of first degree manslaughter."

 We are of the opinion that the case should be affirmed, but because of the errors contained in the record, the sentence of not less than twenty-five (25) nor more than sixty (60) years imprisonment should be modified to fifteen (15) years imprisonment, and as so modified, the judgment and sentence is affirmed.

BLISS, P. J., and BRETT, J., concur.