**Joe Kenneth RIDDLE, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–13099.**

Court of Criminal Appeals of Oklahoma. Sept. 5, 1962.

Rehearing Denied Sept. 26, 1962.

W. B. Ward, Jr., Ada, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., R. O. Ingle, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

This is an appeal by Joe Kenneth Riddle as plaintiff in error, defendant below, from a conviction and sentence of five years in the state penitentiary and a $500 fine for sale of marihuana in violation of 63 O.S. 1951 §§ 451, 452.

The defendant was charged by information in the district court of Pottawatomie County, Oklahoma, tried by a jury, convicted and his punishment fixed as above stated, with a recommendation that the five-year term be suspended.

The trial court advised the jury that the recommendation would be considered, but could not be followed—that he could only suspend the whole sentence, and not just part thereof. The jury was asked if, knowing the law to be such, that would still be their verdict, and upon being so advised, the response was in the affirmative. Judgment and sentence was entered accordingly, from which this appeal has been perfected.

The defendant raises three propositions. First, he contends that the trial court erred in not granting a continuance when the case was called for trial. He states he was not granted sufficient time to prepare for his defense.

The record discloses that the crime was committed on April 30, 1960, and the action instituted November 22, 1960 by complaint. Defendant was admitted to bail on the same date, in the sum of $2500. It appears that preliminary was waived on May 2, 1961 and defendant was bound over to the district court.

On May 2, 1961 the defendant was charged in the district court of Pottawatomie County by information, and arraigned thereon. The defendant was advised of his right to aid of counsel, which he waived, then entered a plea of not guilty to the charge and was released on his previous bond. The case was set for trial for May 17, 1961, more than ten days after the issues were made up. 12 O.S.1961 § 666.

It thus appears from the relation of these facts that the defendant had ample time in which to acquire aid of counsel from the time he was first charged. He was out on bail, and it would seem that any lack of time for preparation was incident to his own indifference to the seriousness of the charge and the necessity for representation. The defendant had nearly five months in which

to employ counsel, but he waited until the case was set for trial to do so.

█ These facts present a situation clearly within the discretion of the trial court. Unless there has been a clear abuse of discretion, the trial court's refusal to grant a continuance will not be disturbed. Sasser v. State, Okl.Cr., 309 P.2d 1090; Robinson v. State, 87 Okl.Cr. 267, 197 P.2d 517.

█ In the latter case it was held:

"A defendant is entitled to a reasonable time to prepare for trial, the question of the unreasonableness being dependent upon circumstances and largely discretionary."

From the record before us, we cannot hold that under this situation the trial court abused its discretion in denying a continuance.

The defendant next contends that the trial court erred in not sustaining his demurrer to the evidence, and his motion for a directed verdict.

The defendant's defense was entrapment. He contends that the state narcotics officer and a Mr. Humphrey came to Ada on the day before the alleged crime for the purpose of inducing him to commit the crime. To the contrary, the state's case presents a conflict, in that it establishes that Humphrey had known the defendant for a long time, but C. W. Roberts, the State's agent, did not know him. Humphrey introduced Riddle to Mr. Roberts at the Harbers Motel. Roberts testified he informed the defendant he wanted to buy a quantity of marihuana for resale in Tulsa. The defendant said he had some for sale, but that he would have to see a Mr. Sellers. Later Sellers and the defendant met at the Motel and discussed the sale. It was agreed that they would meet Roberts at a truck stop near Asher, Oklahoma the next day, April 30, 1960, and consummate the deal.

As agreed, the next day Roberts went to the appointed place and met three men, the defendant driving the car, Sellers sitting on the right-hand side and a third man in the middle. The price agreed on was $30 per half gallon fruit jar. Roberts tried to get it for less, but the defendant informed him it had to be split between the three men, and they would only realize $10 apiece, and they could not afford to sell it for less.

The third man, it was developed on cross-examination and defendant's case in chief, was a Skeet Kaiser, the man riding in the middle of the front seat of the car, and the man who furnished the marihuana. However, it is clear from the state's case that the sale and delivery was made by defendant Riddle, for the sum of $30.

The defendant's testimony was corroborative of Robert's testimony in many respects, except that he made it appear that he was just helping his friend Humphrey get some marihuana, and that he had no other interest in the sale and ownership of the marihuana. It is clear from his testimony that he arranged for Sellers, Kaiser and himself to meet Roberts and Humphrey, and that he delivered the marihuana to Roberts, alias Gene Taylor, and received $30 for it, which he said he gave to Kaiser. Kaiser, he said, told him that the price was $40, and he took $10 out of his pocket and gave it to Kaiser. (A very gracious thing to do, but which the jury evidently did not believe.)

Defendant admitted that he had bought amphetamine and benzedrine tablets, but stated he had a prescription for them. He testified this was the only time he was involved in a marihuana case. He further testified he had never been convicted of any crime except a drunk driving charge in county court, to which he plead guilty. Defendant had known Humphrey for some time, having lived neighbor to him for six years in Pontotoc County, and was a beer-drinking customer of Humphrey and had been in his tavern at least 15 times in two years.

On cross examination of Mr. Roberts another criminal offense of Riddle was established. This was done, notwithstanding the fact that Riddle had not taken the stand in his own defense and made his character and

reputation an issue. Duncan v. State, 89 Okl.Cr. 325, 207 P.2d 324; Wright v. State, Okl.Cr., 325 P.2d 1089, and numerous other Oklahoma cases, and see Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L. Ed. 168.

The injection of this testimony, under the circumstances involved, come dangerously near resulting in reversible error. It put before the jury another offense of which Riddle was never charged, much less convicted. O'Neal v. State, Okl.Cr., 291 P.2d 375; Bunn v. State, 85 Okl.Cr. 14, 184 P.2d 621. Mr. Roberts was asked, "What did you do during the two hours you were waiting for Mr. Sellers to get the marihuana?" He replied, in substance, we went to Ada, Oklahoma, where the defendant Riddle bought two boxes of amphetamine pills from a drug store which he sold to Humphrey for $100 a box, or a total of $200. Riddle denied he made such a purchase, but said he went in with Humphrey and Roberts to the drug store, where Humphrey bought the pills. The fact that Riddle was not arrested for such a purchase and resale as delineated by the state lends credence to his version of the deal.

No objection by counsel for the defendant to this damaging evidence was made, nor was a motion interposed to strike it from the record as a voluntary statement. Nevertheless, it was highly improper for this experienced, well-schooled, highly trained officer to harpoon the defendant with this otherwise inadmissible material matter. This officer is one of the best agents in his field, and one of the worst to volunteer damaging evidence against law violators. Officer Roberts knows better, but he can't resist unleashing the harpoon when it hurts. Whenever he does so, he risks the loss of convictions by reversals in this court. It is only because the error was in some respects invited by defense counsel and no objection was registered as to this voluntary statement and motion to strike was not interposed that this prosecution can be salvaged by a simple modification of the judgment and sentence.

We suggest that this experienced agent, and otherwise a good officer, change his method of operation and refrain from injecting improper matter into his testimony, and therefore render himself a much more effective arm of law enforcement. In his zeal to obtain a conviction, he oversteps the bounds of propriety. This court has the right to take judicial knowledge of its own records. Ex parte Nowabbi, 60 Okl.Cr. 111, 150, 61 P.2d 1139, 1156; Coburn v. State, 78 Okl.Cr. 362, 148 P.2d 483; Wing v. State, Okl.Cr., 359 P.2d 1087; Dunn v. State, Okl.Cr., 279 P.2d 389. In the last three cases before us involving Mr. Robert's testimony, there appears an ever ready willingness to thrust the testimonial harpoon with reckless abandon, detrimental to the state's case, resulting in reversals, in time-consuming delays and needless expense to the state as a result of such tactics.

We feel impelled to suggest the law entitles the state to an honest and fair conviction, and no more. It permits no victims, and the state demands none. We suggest to officers generally that the best officer never jeopardizes a good case by questionable methods of prosecution. Furthermore, judicial castigation is distasteful to this court, but in some situations it becomes an important part of our duty to advise officers that they owe a duty to the accused, just as the courts do, to see that no foul blows are struck. Fair trial is one of the fundamental tenets of American jurisprudence, regardless of the defendant's overwhelming guilt, and this right must be maintained in all events.

We are not so certain in this case that a conviction might not have been had if this amphetamine information had not been fed to the jury. The latter statement is predicated upon the recommendation of the jury for a suspension of the jail time.

It is conceded by the defendant that the trial court properly instructed the jury on the question of entrapment as laid down in Beasley v. State, Okl.Cr., 282 P.2d 249, and Lee v. State, 66 Okl.Cr. 399, 92 P.2d

621. Under the court's instructions and the evidence it was a case for the jury. Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848. It is apparent the jury did not believe the defendant's theory. The case of Savage v. State, Okl. Cr., 304 P.2d 344 supports the conviction herein.

It was not illogical to conclude from the evidence herein that Humphrey was told about the marihuana source, and he conveyed the information to Roberts, the state agent, whose decoy Humphrey later introduced him to the defendant. The agent then afforded defendant the opportunity to make a sale, which he readily did. All Officer Roberts did as believed by the jury, was to afford the defendant the opportunity. He at no time performed any essential act or acts constituting the crime. The defendant, a "pusher" for Kaiser and Sellers, when given the opportunity, consummated the crime in all its essentials.

In Beasley v. State, supra, it was said, quoting from Burdick's The Law of Crime, Vol. 1, § 195:

"'That one is caught in the commission of a crime merely because some trap is laid for his detection and capture is, in itself, no logical reason for holding him irresponsible. The marking of money, or intentionally leaving it exposed in case of a suspected or anticipated robbery or larceny, or setting a watch for criminals, or leaving open a door so that an expected thief may more easily get into a house, or in other ways merely providing facilities for the commission of a crime, furnishes no defense for the offender.

"' "Entrap" means, literally, to ensnare, to catch in a trap, but "entrapment," as the term is now usually employed in the law of crime, means inciting, inducing, or instigating one to commit a crime not originally contemplated by him, for the purpose of entrapping him in its commission and instituting criminal prosecution against him. The mere furnishing of oppor-

tunity to another who is ready and willing to commit the offense is not such entrapment, * * *.

"'Many "entrapment" cases are connected with improper inducements made by law enforcement officers to entice one to violate the law, for the purpose of arresting and prosecuting the violator. Such despicable acts are often motivated by desires for fees and "efficient" records, but, as a rule, they have deserved and received denunciations from the courts, and have been recognized as constituting a defense on the ground of public policy.

"'Artifice and stratagem may lawfully be employed to catch those engaged in the commission of crime, but it is a different matter when the criminal design originates with an officer of the law, and he incites an innocent person, or any one not contemplating an offense at the time, to commit a crime in order that the officer may prosecute.'

"In Finley v. State, supra [84 Okl. Cr. 309, 181 P.2d 849, 860], this court stated:

"'* * * This court has held that a decoy may be used to detect a criminal, by giving him an opportunity to commit the intended offense, and the decoy may be present and apparently assist in its commission and such conduct on the part of the decoy is no defense. * * *'"

The question of entrapment under proper instructions is one for the jury, as held in Sherman v. United States, supra, cited in Riddle v. State, Okl.Cr., 273 P.2d 832.

It is apparent in the case at bar the criminal design did not originate with the state agent, but he did give the defendant the opportunity to commit the offense. Moreover, this record does not present the defendant as an otherwise innocent person. There is a strong circumstance that this defendant was a dealer in such things as marihuana. Such official conduct as herein employed does not constitute en-

trapment, and the evidence supported the conviction.

Finally, the defendant complains that the court erred in fixing the sentence at five years in the penitentiary. This contention is predicated upon the jury's recommendation as to suspension of the imprisonment.

This court has repeatedly held that the trial judge is not bound by the jury's recommendation in such cases. Simmons v. State, Okl.Cr., 372 P.2d 239; Parker v. State, 91 Okl.Cr. 71, 216 P.2d 340; Hughes v. State, Okl.Cr., 346 P.2d 355; Holman v. State, 97 Okl.Cr. 279, 262 P.2d 456; Turvey v. State, 95 Okl.Cr. 418, 247 P.2d 304; Spencer v. State, Okl.Cr., 275 P.2d 329; Scott v. State, Okl.Cr., 279 P.2d 1113.

Especially such is true where the trial judge polled the jury, asking if, knowing the court would not be bound by the recommendation, that would still be their verdict. The answer of each was in the affirmative that it would still be their verdict.

Under these conditions, we would affirm the trial court's judgment, except for the fact that the volunteer testimony of Officer Roberts deprived the defendant of that degree of a fair and impartial trial to which he was entitled. To approve the conduct we have denounced, by affirming the judgment and sentence "in toto" would open the door to repeated prosecutors violations in such cases. In the interest of justice this we refuse to do. We are convinced that the court itself may have looked at the matter as we did on first blush—here we have another peddler and pusher—and hence he gave little consideration to the jury's recommendation in fixing sentence. Nevertheless, we are of the opinion that if this case were tried many times, the verdict would be guilty, and reversal would be a vain act. 22 O.S. 1961 § 1068. Under these conditions we feel impelled to modify the sentence from five years imprisonment and a $500 fine, to eighteen months imprisonment in the state penitentiary, and a $500 fine.

As so modified, the judgment and sentence is affirmed.

NIX, P. J., and BUSSEY, J., concur.