Robert E. McCART, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14162.

Court of Criminal Appeals of Oklahoma.

Nov. 29, 1967.

Rehearing Denied Jan. 16, 1968.

Robert E. McCart was convicted for the offense of Possession of Marihuana and appeals. Affirmed.

Thad L. Klutts, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Charles L. Owens, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Robert E. McCart was charged, tried and convicted for the offense of Possession of Marihuana and was sentenced to a term of two years in the State Penitentiary, one of which was suspended by the trial judge. On appeal the defendant argues four assignments of error.

Under Proposition No. 3, the defendant argues that the evidence is insufficient to support the verdict of the jury. In this connection we will set forth briefly the testimony of State's witness Charles G. Hill, upon which the conviction rests, and the pertinent testimony of defense witnesses.

Charles G. Hill testified that at the time of the alleged crime, he was an undercover agent of the Oklahoma State Crime Bureau. He testified that on May 26, 1964, at approximately 11:00 a. m., he went to 3122 Classen Boulevard, Oklahoma City, the home of the defendant, whom he had met previously, and had a conversation with him relative to obtaining some marihuana. The defendant advised him that he didn't have as much as he usually had, but that Hill could have a portion of the defendant's personal supply if he wanted it. Hill accepted the offer and the two of them went outside somewhere behind the house, where the defendant obtained from behind a garbage can, a small bottle containing a green leafy substance. The defendant gave a portion of this to Hill, who later turned the same over to the State Chemist who analyzed it as marihuana.

The testimony of the defendant and his wife, Lucy McCart, was substantially to the same effect that the witness Hill came to their residence on the date in question; however, they testified that they were both sculptors and maintained a showroom and workshop at their residence and that Hill came there for the purpose of looking at some of their work. They denied that there was any mention by anyone of marihuana and testified further that Hill's testimony of being given some marihuana by the defendant simply was not true.

It is readily apparent that the testimony of State's witness Hill and that of the defendant and his wife are in sharp conflict. However, this presented a question of fact for the jury's determination, and Hill's testimony was ample to support the charge upon which the defendant was convicted if believed by the jury and they resolved the issue against the defendant.

We have repeatedly held that where the evidence is conflicting and different inferences can be drawn therefrom, it is the province of the jury to weigh such evidence and determine the facts. See Grant v. State, Okl.Cr., 385 P.2d 925; McCluskey v. State, Okl.Cr., 372 P.2d 623.

This leads us to a consideration of the defendant's assignment of error No. 1 that the conviction must be reversed for the reason that the defendant was en-

trapped, and further (Proposition No. 2), that he was not advised of his constitutional rights in accordance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694, 10 A.L.R.3d 974, and Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977. We believe the Attorney General's brief adequately resolves both of these issues and here set forth the pertinent portion of his brief, which we adopt.

> "Counsel for the defendant is, somehow, of the opinion that the undercover agent for the State Bureau of Investigation, Charles Hill, was guilty of entrapment and that this should void this conviction. This is an interesting theory, to say the least, because under it, coupled with his theory of defense at his trial, the defendant is saying, in effect, 'No such delivery of marihuana from me to the Crime Bureau agent ever took place, but should you believe that it did take place, then I urge you to believe that I was induced to make such delivery to the agent and I would never have perpetrated the crime had I not been so induced.' Obviously these two theories are irreconcilable conflict. But be that as it may, let us look to the merits of this argument.

> The latest expression of this court of what is or is not entrapment is found in the case of In Re Patton, Okl.Cr., 382 P.2d 28, in which the court quoted and adopted the following general rules which are found in 22 C.J.S., Criminal Law § 45(2) as follows:

>> 'One who is instigated, induced, or lured by an officer of the law or other person, for the purpose of prosecution, into the commission of a crime which he had otherwise no intention of committing may avail himself of the defense of "entrapment." Such defense is not available, however, where the officer or other person acted in good faith for the purpose of discovering or detecting a crime and merely furnished the opportunity for the commission thereof by one who had the requisite criminal intent.

> \* \* \*

>> Accordingly, entrapment is not available as a defense to a person who has the intent and design to commit a criminal offense and who in fact does commit the essential acts constituting it, merely because an officer of the law, in his effort to secure evidence against such person, affords him an opportunity to commit the criminal act, or purposely places facilities in his way or aids and encourages him in the perpetration thereof, particularly or at least where the doing of the particular act is a crime regardless of the consent of anyone. However, the government officers cannot employ extraordinary temptations or inducement to commit the crime.

>> It has been held that the principle of entrapment places no limitation on the right of officers to obtain evidence of any crime originating in the mind of another; and an officer may, when acting in good faith with a view to detecting crime, make use of deception, trickery, or artifice. \* \* \*'

> These rules cover precisely the fact situation now before the court. The Crime Bureau agent could by no stretch of the imagination be said to have induced this defendant to commit the crime of which he was convicted. Such conviction was for *possession* of marihuana. In order for this defendant to prevail here on his allegation of entrapment, we submit, the agent's testimony would have to be that he conveyed the marihuana to the defendant and thereby caused the latter to be in possession of same. But that is not the situation here. The undercover agent, Hill, testified that through trickery on his part he induced this defendant to bring forth from its hiding place some marihuana which he already possessed. Certainly this is not entrapment as this court has defined it, for if the defendant had possession of the marihuana before Hill ever came to his residence, then the crime had already been

committed and required no inducement on the agent's part.

See also the opinion of this court in Riddle v. State, Okl.Cr., 374 P.2d 634.

\* \* \* \* \* \*

Next counsel is of the opinion, somehow, that the recent landmark decisions of the Supreme Court of the United States concerning the privilege against self-incrimination are applicable here, same being Miranda v. Arizona [384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694], and Escobedo v. Illinois [378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977].

\* \* \* \* \* \*

The holding of Escobedo is best summarized in the 2nd paragraph of the court's opinion, which is as follows:

'The accused in a state prosecution is denied the assistance of counsel in violation of the Sixth Amendment to the Constitution as made obligatory upon the states by the Fourteenth Amendment, and no pretrial statement elicited by the police during interrogation may be used against him at a criminal trial, where the police investigation, conducted prior to indictment, is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, *the suspect has been taken into police custody*, the police carry out a process of interrogation that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent.'

The court summarized its holding in Miranda in the body of the opinion as follows:

' \* \* \* \* \* \*

To summarize, we hold that *when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way* and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him through the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.'

And see the 46th paragraph of the syllabus of Miranda, which provides:

'The American adversary system of criminal proceedings, distinguishing itself at the outset from the inquisitorial system recognized in some countries, commences when an individual is first subjected to police interrogation *while in custody at the station or otherwise deprived of his freedom of action in any way*; at this point the safeguards erected about the privilege against self-incrimination come into play.'

Clearly Escobedo and Miranda apply to custodial interrogation. Nothing of that nature is involved here. Here the defendant was not in custody, nor was he deprived of his freedom of action in any manner, nor was he being interrogated. To the contrary, he had no idea that Crime Bureau agent Hill was a law enforcement officer. To carry counsel's

argument to its logical conclusion this court would have to hold that the agent was obliged to advise this defendant something to the effect that, 'I am an undercover agent for the Oklahoma Bureau of Investigation and I am here to trick you into showing me that you are in possession of marihuana. But before I begin my undercover work, I must advise you that you have a right to remain silent and not let me trick you, that anything you say to me or show me by reason of my trickery may be used against you in a court of law, that you have the right to have an attorney here before I begin my trickery, and if you cannot afford an attorney, one will be appointed for you.' Then, of course, under counsel's theory, if the defendant knowingly and intelligently waived these rights and consented to the agent's trickery, the results thereof could later be used against the defendant at trial.

Certainly this farcical result was not the intent of the Supreme Court of the United States when it handed down Escobedo and Miranda."

For all of the reasons above set forth, we are of the opinion that these assignments of error are wholly without merit.

Perhaps the most serious error presented to this Court is the defendant's 4th assignment of error relating to the "reprehensible conduct of the Assistant County Attorney." Under this assignment defendant argues that the Assistant County Attorney committed reversible error in the following instances:

CM 73:

"BY MR. PAGE:

Q. Mr. McCart, is it your testimony that you never saw that officer right there before May 26th? You were sitting right here and heard him testify. Do you state that testimony of his was a lie?

MR. KLUTTS: Objected to as an improper question.

THE COURT: The objection will be sustained.

Q. Well, if he testified that he saw you at the Luster Motel on May 6th or 7th, is that a lie?

MR. KLUTTS: Same objection.

THE COURT: It will be sustained as to the language used, ladies and gentlemen of the jury."

CM 75:

"BY MR. PAGE:

Q. Did you know that Pecolia Robinson is a prostitute?

A. I did not know it.

MR. KLUTTS: Object to that as incompetent, irrelefant and immaterial.

THE COURT: The objection will be sustained.

MR. KLUTTS: And we ask that he be admonished and ordered to refrain from asking any more such questions.

MR. PAGE: I have a right to go into the credibility of these people.

MR. KLUTTS: He cannot help what his customers do, no more than you and I can help what our clients do.

MR. PAGE: You went into the fact that he had busts of Johnston Murray and other famous people.

THE COURT: Ladies and Gentlemen of the Jury, I want to apoligize for the County Attorney's Office making these unjust remarks over the Court's objection. All right, let us proceed."

Defendant is correct in his contention that these questions were improper. The proper form of the question to the witness' disagreeing with the testimony of Officer Hill should have been "Is that statement correct or incorrect?" However, in view of the court's ruling, we do not deem the Assistant County Attorney's question as being so prejudicial as requiring a reversal or modification. Counsel's question as to whether the defendant knew that Pecolia Robinson was a prostitute was also improper; however, in view of the fact that the defendant had elicited the same information on cross-examination of Officer

Hill, he cannot now complain of this error since the facts were fully before the jury.

In view of the fact that the trial judge sustained defendant's objection to these questions and admonished the jury to disregard them and the defendant did not move for a mistrial, we are certain that the trial court took into consideration these remarks when he suspended half the sentence imposed by the jury.

For all of the reasons above set forth the judgment and sentence appealed from is affirmed.

BRETT, J., and NIX, P. J., concur.