**Aaron WILLIAMS, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–15307.**

Court of Criminal Appeals of Oklahoma.

July 1, 1970.

Don Anderson, Public Defender, for plaintiff in error.

G. T. Blankenship, Atty. Gen., W. Howard O'Bryan, Jr., Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge:

Aaron Williams, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County for the crime of Assault and Battery With Intent to Kill. The punishment was left to the court and the court fixed punishment at 12 years in the penitentiary, 6 years to be served and the last 6 years to be suspended. From said judgment and sentence, he appeals.

Briefly stated, the facts adduced on the trial reveal that on August 9, 1967, Robert Burris arrived alone about 9:00 or 10:00 p. m. at the Ebony Club, described by one of the waitresses as a "tough joint," on Stiles Circle. About 15 people were present.

Burris testified that as he entered defendant passed in front of him "pretty well under the way * * * intoxicated" (R45) and offered him a drink. On Burris's refusal, defendant uttered an epithet. Burris ordered a sandwich and drink and on the way to a booth defendant bumped into him and spun him around saying, "why don't you watch where you're going?" (R58). At the invitation of Joe James, Burris joined him and Shirley Freeman at another booth. Defendant shortly returned to this booth and uttered another epithet and threat, whereupon as Burris testified, "I seen this knife coming and I started out of the booth * * * that's when he caught me right here," (R49) stabbing Burris with a knife in the chest. Burris testified he then got up and left, walking about two blocks, and then being pursued about two more blocks by defendant where he fainted and remembers being put in an ambulance. Burris denied having any quarrel with defendant or anyone else, and denied striking any blows or seeing anyone else strike defendant. Although Burris knew defendant by name the evening this took place, he did not name defendant to the officers until after he had been shown some mug shots. When the court asked Burris why he had to look at pictures to tell who it was, Burris replied, "Well, I was for sure then that was him." (R65).

Shirley Freeman testified that she was a waitress at the Ebony Club, but at the time in question was off duty. She was sitting in a booth with Joe James a little before 10:00 p. m. when Burris joined them upon invitation. She testified defendant entered the place and started to the bar at the rear then returned by their booth "and then I seen him hit Robert Burris in the chest but I didn't see any knife or anything so Robert Burris was fixing to get up and

so he got on up and then I seen him grab his chest and I seen blood * * *." She denied having heard Burris say anything or offer provocation, or strike at defendant.

Defendant testified he entered the club about 9:30 and went to a table about two or three feet from Burris's booth and in use by Ned Johnson and about nine others. Johnson was standing by Burris's booth and called defendant over, complaining loudly that someone had cut his pockets and taken his wallet and inquired what defendant knew about it. He was very disturbed and profane and "I was facing him and he was standing beside Mr. Burris and the two of them got engaged in a conversation about this because he had accused them of cutting his pockets." (R77). * * * "as I turned, Mr. Burris was swinging a bottle and I got hit between the eyes with it and I fell back and the next thing I knew I was going out the door." (R78). Defendant denied having a knife and denied having any words with Burris. Officers picked him up and offered to take him to the hospital, but he refused (R78).

Ronny Taylor testified that he was there and "saw a bottle go up and I saw Aaron fall." (R91). He did not see defendant strike anybody and was sure defendant did not have a knife. He confirmed that police picked defendant up just outside the club and took him home.

Lonnie Walker testified to substantially the same and in addition that he saw "some big dude" with his pocket cut, apparently asleep. "I figured he was laying there for somebody to try it again." When asked if this person said anything, Walker replied: "Things were happening too fast for that." (R128).

Joe James testified that he was sitting in the booth with Shirley and Burris that evening and saw defendant walk up to the table. "I didn't hear him say anything.

Then I saw Robert grab his chest like that and he just fell over the table like that and then I seen all that blood." (R102). He saw no knife and heard no words of provocation.

Dr. Honaker testified defendant had a puncture wound of the left upper chest and was hospitalized ten days, six of which were in the intensive care unit.

■ On appeal it is first contended that the evidence is insufficient to support the verdict of the jury. From the foregoing recital of facts, it is readily apparent that the evidence offered on behalf of the State, although in sharp conflict with the evidence offered on behalf of defendant was sufficient, if believed, to support the verdict of the jury. We have repeatedly held that where there is competent evidence in the record from which the jury could reasonably conclude that defendant was guilty as charged, the Court of Criminal Appeals will not interefere with the verdict even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. See Music v. State, Okl.Cr., 396 P.2d 894 and Hudson v. State, Okl.Cr., 399 P.2d 296. In accordance with the authority above set forth, we are of the opinion that this assignment of error is without merit.

■■ It is next contended that the punishment imposed is excessive. We need only observe that the punishment imposed was well within the range provided by law, the record is free of any error which would justify modification or reversal and under such circumstances we are of the opinion that the judgment and sentence appealed from should be, and the same is hereby, affirmed.

BRETT, P. J., and NIX, J., concur.