Nancy Gayle **STRIPLIN**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–16346.

Court of Criminal Appeals of Oklahoma.

June 28, 1972.

Williams, Fransein & Savage, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Fred Anderson, Asst. Atty. Gen., for appellee.

BRETT, Judge.

Appellant, Nancy Gayle Striplin, hereinafter referred to as defendant, was convicted in the District Court of Tulsa County, case no. CRF 70–1473, of unlawful sale of LSD and sentenced to a term of imprisonment of three to eighteen months.

Judgment and sentence was imposed on November 4, 1970, and this appeal perfected therefrom.

It was charged that the defendant, age 18, sold two LSD tablets for $10.00 to William McDonald on May 29, 1970, in a park in Tulsa, Oklahoma. At the trial only two witnesses, McDonald and defendant, testified. It was stipulated that the two tablets introduced into evidence contained LSD.

McDonald, an undercover police officer, testified that "an LSD purchase had been set up" by him through "an arrangement with Curt Crawford and Eddy Dayton to have Nancy [defendant] brought to this park to meet" McDonald on May 29th. McDonald related that he had contacted and "arranged through both" Crawford and Dayton for the "set up" on the day before the sale. McDonald testified that Crawford and Dayton "were working for" him to "help me make buys through some dope pushers." Crawford and Dayton had been arrested by McDonald for a drug offense, but no criminal prosecutions had been filed against them. According to McDonald, Crawford and Dayton "thought I had a hammer" on them, so "they were working with" the police.

As arranged, McDonald, alone in his car, drove up behind a car occupied by Dayton, Crawford, and defendant in a parking lot. Following their signal, McDonald followed their car about two blocks to a park, where they stopped. Acccording to McDonald, Dayton and defendant left their car and got into McDonald's car. Dayton introduced McDonald and defendant. McDonald then asked defendant if she had the acid, meaning LSD. She said yes. After some discussion on price, defendant gave two tablets to McDonald in exchange for ten dollars. After the exchange, McDonald said he asked defendant if the park was a "cool place to deal." According to McDonald, defendant said the park was not safe and that she had thrown some "dope" away there last week when the police arrived.

Defendant testified that about 12:30 P. M. on May 29th, Curt Crawford phoned her and asked if she would like to ride around awhile. About an hour later Crawford came by and picked up defendant at her residence. Dayton was in Crawford's car. The three drove for awhile when Crawford mentioned that he was "going to meet a good friend and sell him some LSD tablets." A while later Crawford asked defendant, "would you sell it for me?" Defendant agreed and Crawford handed her two tablets, telling her the price was five dollars each. Crawford also told defendant that "if this friend of mine asks if you could get any more, tell him that you can get eight more by five this evening." According to defendant, she and the two boys got into McDonald's car. After the exchange, defendant "gave Curt the money." Crawford and Dayton then returned defendant to her residence. As to why she had participated in the exchange, defendant said she "liked Curt pretty well. Just a favor to him." She had not known until that day that Crawford was dealing in drugs. Defendant had never been convicted of a crime or arrested until this charge. She denied that she had ever sold drugs or used narcotics, although she had tried marihuana once.

After she was arrested, defendant remained in custody some forty days, being financially unable to post bond. Defendant filed a pauper's affidavit and in the preliminary proceedings was represented by the public defender. Defense counsel timely filed for issuance of subpoenas for Crawford and Dayton, which were returned indicating they could not be located by the sheriff's office. Defendant's motion for a continuance due to the absence of Crawford and Dayton was denied by the trial court.

■ Defendant contends that evidence establishes an entrapment and thus the trial court erred in overruling the demurrer and motion for directed verdict; and further erred in failing to allow a continuance to secure the attendance of two wit-

nesses, Crawford and Dayton. It is the general rule that "Entrapment is the planning of an offense by an officer, or someone acting under his direction, and his procurement by improper inducement of its commission by one who would not have perpetrated it, except for the trickery of the officer." Watson v. State, Okl.Cr. 382 P.2d 449, at 451 (1963). "One who is instigated, induced, or lured by an officer of the law or other persons, for the purpose of prosecution, into the commission of a crime which he had otherwise no intention of committing may avail himself of the defense of 'entrapment.'" McCart v. State, Okl.Cr., 435 P.2d 419 (1967). In Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), the Supreme Court held:

> "It is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution. . . . A different question is presented when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." 287 U.S. at 441–442, 53 S.Ct. at 212.

> \*    \*    \*    \*    \*    \*

> "When the criminal design originates, not with the accused, but is conceived in the mind of the government officers, and the accused is by pursuasion, deceitful representation, or inducement lured into the commission of a criminal act, the government is estopped by sound public policy from prosecution therefor." 287 U.S. at 445, 53 S.Ct. at 214.

As stated in Sherman v. United States, 356 U.S. 369, 372–373, 78 S.Ct. 819, 821, 2 L.Ed.2d 848 (1958) : "To determine whether entrapment has been established, a line must be drawn between the trap for the unwary innocent and the trap for the unwary criminal."

In reversing a conviction on the theory of entrapment, this Court held in Beasley v. State, Okl.Cr., 282 P.2d 249 (1955) :

> "A decoy may be used to detect or entrap a criminal, and as such may afford an opportunity for a criminal to commit a crime, and may be present apparently assisting in the commission of a crime, and such action on the part of the decoy will not constitute a defense. But, when the decoy first suggests, initiates, or induces the commission of the crime, or, as it sometimes said 'artificially propagates' the crime, and thereby lures an otherwise innocent person to aid and abet him, or where the decoy himself does some act essential to the crime charged, a sound public policy will not uphold a conviction."

A conviction for sale of heroin was reversed in Gray v. State, 249 Ind. 629, 231 N.E.2d 793 (1967), where the court found that the defendant had been entrapped. In that case there was no evidence that defendant had been engaged in a sale of heroin or that he had any intent to make the sale before he was asked to do so by a police informer, and the idea to bring about the sale originated with the law enforcement officers. The court concluded that the "only evidence here shows a plan to lure and entice the appellant to violate the law by selling heroin to an informant under a plan devised by law enforcement officials." In reversing, the court observed that "there is a failure of proof in this case to rebut the admitted plan and scheme of the law enforcement officers to bring about a sale of heroin by the appellant." 231 N.E.2d at 796.

A conviction for unlawful sale of narcotics was reversed because of entrapment in People v. Carmichael, 80 Ill.App.2d 293, 225 N.E.2d 458 (1967), where the defendant testified that he was supplied with the narcotics, which were the subject of the illegal sale, by a police informant and there was no evidence to controvert defendant's claim. Carmichael had made the illegal sale to a police informer named Brooks.

The court held that "a conviction for the sale of narcotics must be reversed where the State failed to controvert defendant's testimony that the police supplied the narcotics which appeared to be subject of an illegal sale." In reversing the court observed that the "State had ample opportunity to refute defendant's contention that Brooks supplied the narcotics by recalling him to the witness stand in rebuttal." 225 N.E.2d at 460. The same conclusion was reached in People v. Strong, 21 Ill.2d 320, 172 N.E.2d 765 (1961), where the court held that a conviction for the sale of narcotics could not be sustained where "the undisputed testimony of defendant strongly tends to prove that defendant was supplied with the narcotics by . . . the government employee." 172 N.E.2d at 768.

In United States v. Owens, 228 F.Supp. 300 (D.C.1964), the narcotics agent Turnbou used an informant named Irby, who was under criminal indictment, to gain the friendship of the defendant and induce defendant to make an illegal sale to Turnbou. The evidence in that case established that "the sale made by defendant on May 26, 1963 was induced by a Government undercover agent, acting with the informer Irby, and that there is no evidence to show that defendant was predisposed to commit the offense. Agent Turnbou had seen no prior sale by defendant, and he knew of no such sale. . . . Defendant had merely been seen in the company of other users and some sellers—but such association is not sufficient to indicate a *predisposition to sell* narcotics." The court concluded that the agent's "action was clearly calculated to pursuade an otherwise unwilling defendant to do something he had not done in the past—namely, to sell narcotics." 228 F. Supp. at 304.

■ As to the burden of proof in cases of entrapment, the "fact that an accused asserts the affirmative defense of entrapment does not shift the burden of proof to him. When the defense is raised or asserted, the burden is on the government to prove beyond a reasonable doubt that en-

trapment did not occur." Martinez v. United States, 373 F.2d 810, at 812 (10th Cir. 1967). "When it can fairly be said that the issue of entrapment has arisen at the trial, it becomes the prosecution's burden to establish beyond a reasonable doubt that the accused was not entrapped into the commission of the offense." United States v. Brown, 421 F.2d 1283, at 1284 (9th Cir. 1970). Also Notaro v. United States, 363 F.2d 169, at 174–175 (9th Cir. 1966).

■ In applying the law of entrapment to the facts in the instant case, the "pivotal point to be determined is who first suggested, initiated or induced the commission of the crime." Beasley v. State, supra, 282 P.2d at 250. The evidence of the state, through the testimony of undercover officer McDonald, establishes that the officer, through two police informers, who were working for him, arranged and set up the sale by defendant on May 29th in the park. The officer acknowledged that he planned for the informants to bring this defendant to the park at a specified time for the specific purpose of selling him two tablets of LSD. The state's own evidence establishes that the two informants, Crawford and Dayton, were working for Officer McDonald. Thus they were the agents of the police in the preparation and execution of the plan to induce the defendant to make an unlawful sale. Officer McDonald testified that he did not furnish the informants with the LSD which was given to the defendant for the purpose of the sale. However, the evidence that the police informant Crawford induced defendant to make the sale and furnished her with the drug is unrefuted. The informant Crawford was operating as a police agent in the plan and if he induced the defendant, as defendant testified, it was entrapment. There was no evidence to refute defendant's testimony that the police informant first suggested the crime and furnished her with the LSD for the sale. Thus, the state failed in its burden to establish beyond a reasonable doubt that the defendant was not entrapped.

The defendant had no previous conviction; and there was no evidence of a prior sale of illegal drugs by the defendant. We do not believe that Officer McDonald's testimony that the defendant had told him she had thrown away some "dope" in the park a week earlier is proof of a predisposition to sell unlawful drugs under the guide of United States v. Owens, supra. The evidence shows the criminal conduct was "the product of the creative activity" of the police. Sherman v. United States, supra, 356 U.S. at 372, 78 S.Ct. at 821. The uncontroverted evidence is that the police agents implanted the disposition to commit the offense in defendant's mind, induced its commission, and furnished the illegal drugs necessary for its commission. Thus the evidence does not support the verdict and the trial court erred in denying the demurrer and motion for directed verdict.

■ Furthermore, it appears the trial court abused its discretion in denying a continuance for defendant to locate and secure the attendance of the witnesses Dayton and Crawford. These witnesses were material as they could have corroborated defendant's testimony or refuted her claim. It is true, as the state argues, that the prosecution was not obligated to call Crawford and Dayton. But the trial court should have granted defense counsel the opportunity to locate these material witnesses.

Of necessity the police must often resort to decoys and traps to apprehend the willing criminal. But as former Chief Justice Hughes admonished: "The first duties of the officers of the law are to prevent, not to punish crime. It is not their duty to incite to and create crime for the sole purpose of prosecuting and punishing it." Sorrells v. United States, supra, 287 U.S. at 444, 53 S.Ct. at 213.

Judgment and sentence is hereby reversed and remanded.

BUSSEY, J., specially concurring:

While I agree that the case must be reversed, I believe the issue of entrapment is one to be resolved by the jury under proper instructions as was given in the instant case; however, I agree that the failure of the trial court to grant a continuance in order that the defendant could subpoena Crawford and Dayton was an abuse of discretion since their testimony was vital to the issue of entrapment, and under testimony of Officer McDonald they were acting as *de facto* agents of the State of Oklahoma.