Oscar W. **HUMPHREYS**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–17424.

Court of Criminal Appeals of Oklahoma.

July 2, 1973.

**198**

Virgil L. Upchurch, Anadarko, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Amy Hodgins, Legal Intern, for appellee.

## OPINION

BLISS, Presiding Judge:

In the District Court of Caddo County, Case No. CRF–71–49, Appellant, Oscar W. Humphreys, hereinafter referred to as defendant, was charged, tried, and convicted for the offense of Sale of a Stimulant. His punishment was fixed at two (2) years imprisonment; and from that judgment and sentence, he has perfected a timely appeal to this Court.

Agent Samuel C. Sparks, of the Oklahoma State Bureau of Investigation, testified that at approximately 11:45 a. m. on April 16, 1971, he observed a meeting between the defendant and agent Charles Ryan. The meeting, located at the Tastee Freez, North First Street, Anadarko, Oklahoma, was recorded on Video tape with the alleged transaction taped on a recording received from a transmitter concealed on Ryan's person. After qualification of the evidence, the Video tape and tape recording were both introduced into evidence without objection of defense counsel.

Agent Charles Ryan, of the Oklahoma State Bureau of Investigation, testified that on the above date he met the defendant at the above drive-in at approximately 11:45 a. m. Ryan testified, without objection of defense counsel, on direct and cross-examination, that he was introduced to the defendant on April 12, 1971, by a Mr. Kirkley. On this day, Kirkley phoned the defendant in Ryan's presence and arranged a meeting at the above mentioned Tastee Freez. Ryan and Kirkley drove to the Tastee Freez in Kirkley's car. Upon arrival the defendant entered Kirkley's vehicle and Ryan negotiated for the purchase of a quantity of marijuana. The defendant refused to sell marijuana and after a further negotiation, the defendant sold Ryan approximately twenty-seven tablets, later identified as LSD, for the sum of thirty dollars ($30.00). On April 16, 1971, Ryan again met with the defendant at the same location. Upon the defendant's entry into Ryan's vehicle, Ryan asked the defendant if he had the "stuff" with him. He replied he did not; that he would have to get it from another location. They agreed to meet again at the same location approximately twenty minutes later, the time the defendant stated it would take him to get some "Mesc," a combination tablet of mescaline and an amphetamine. After a lapse of approximately thirty minutes, the defendant returned to Ryan's car, entered the vehicle, and produced a cellophane "baggy" from the inside of his shirt. The baggy contained approximately twenty-five tablets. They agreed on the price of one dollar ($1.00) per tablet, the defendant removed eleven tablets from the baggy and wrapped them in a gum wrapper. In exchange for these tablets, Ryan delivered to the defendant ten dollars ($10.00). Ryan testified he did not on any occasion purchase with, nor agree with the defendant to conjointly purchase contraband from a third person. (Tr. 117)

Mr. William J. Caveny, Oklahoma State Bureau of Investigation Chemist, testified that the tablets contained lysergic acid diethylamide. Thereafter, the state rested.

The defendant testified that he had been a user of stimulants since his service duty in the military. Further, he testified he was acquainted with Donald Kirkley and on prior occasions he and Kirkley "pooled" their money to obtain stimulants from a third party, as a purchase in larger quantities enabled them to purchase at a lower purchase price. Purportedly, Kirkley approached him frequently requesting he sell stimulants to him, but he always refused.

On April 12, the defendant testified Kirkley phoned him wanting him to purchase some stimulants in the same manner as they had done on prior occasions. He met with Kirkley, and Ryan, at the Tastee Freez. On this date he refused to sell Kirkley and Ryan stimulants, but stated he would share with them the cost of a quantity purchase and obtain them. On April 16, he stated he was contacted by Ryan by telephone. Ryan stated he wanted to purchase some stimulants. The defendant replied that he did not have "anything", however, he did agree to meet with Ryan. When he entered Ryan's car at the Tastee Freez, Ryan asked him if he had any "weed." He replied he didn't, but further stated he had tablets containing amphetamine and mescaline, but he did not have them with him at the time. The defendant and Ryan separated. The defendant obtained the tablets and met with him again at this same location approximately thirty minutes later, and delivered the tablets. He stated his understanding throughout the process was that he and Ryan were sharing the costs on the purchase of a large quantity of tablets. After April 16, Ryan recalled him requesting more stimulants. His testimony revealed he responded stating, "No, I don't want anything to do with it anymore." (Tr. 148) Finally, the defendant testified that on every occasion previously mentioned, all conversations and negotiations were initiated by Ryan. Thereafter, the defense rested.

In defense counsel's first proposition he submits Sherman v. United States, 356 U. S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), in support of his argument the defendant was entrapped into committing the instant offense. By implication counsel submits the rule in *Sherman*, supra, is applicable in the case at bar as this Court recited it as authority in Striplin v. State, Okl.Cr., 499 P.2d 446 (1972), an opinion discussing the issue of entrapment. *Sherman*, supra, is distinguishable from the instant case for the two following distinct reasons:

First, *Striplin*, supra, is not precedent in support of an issue of entrapment as there were only two participating judges in that opinion. One of the judges specially concurred in result only stating a different ground for the conclusion reached. Therefore, the issue of entrapment adopting *Sherman*, supra, was not a clear majority decision on this issue and stands only in its general result. No point of law is established by the decision and it cannot be precedent covered by the stare decisis rule. Therefore, since the decision in *Sherman*, supra, was rendered under the Supreme Court's supervisory jurisdiction over the lower federal courts, it is not a binding decision on this Court as it has not been construed through the Fourteenth Amendment applicable to State decisions on the subject.

Second, *Sherman*, supra, was decided upon on uncontroverted evidence of entrapment, removing the factual determination from the jury's province, and rendering the evidence of a legal character establishing entrapment as a matter of law. This is not the circumstance in the instant case.

In the case at bench the evidence is not uncontroverted. Coupling the facts as herein stated with a careful study of the tape recording introduced at trial without objection of counsel, we find sufficient evidence to submit a factual question of entrapment to the jury. The recording of the defendant's statements during the transaction revealed the following: The defendant was familiar with sources and problems encountered in distributing contraband. The defendant, in response to Ryan's request of permission to accompany him in meeting his distribution source in Lawton, refused stating he would transport marijuana to Ryan whenever he could get it. Further, the defendant asked Ryan if he would be willing to pay one hundred and thirty dollars ($130.00) for a pound of marijuana stating Ryan could probably make two to three hundred dollars profit in distributing it. All of the tape recorded conversation was interrelated with the instant transaction, part of the res gestae of

the instant offense, and was proper evidence from which the jury could reasonably conclude: that this offense originated with the defendant; that the intent to do this act did not originate from another source; that the defendant was not induced to perform the acts; that the state agents merely provided an opportunity for the defendant to commit the offense; and that the defendant was not an otherwise innocent person. The resolution of a question of entrapment on controversial evidence is a factual question for the jury, Kissick v. State, Okl.Cr., 504 P.2d 889 (1973). We find the conflict between the defendant's evidence and the facts herein stated coupled with the tape recording properly within the province of the jury. We have repeatedly held that we will not invade the jury's province on the jury's resolution of a conflict in the evidence. Williams v. State, Okl.Cr., 473 P.2d 248 (1970). We therefore find this proposition to be without merit as the evidence did not establish entrapment as a matter of law and was properly submitted to the jury to be resolved as a factual issue.

■ The defendant suggests in his second proposition that the trial court erred in instructing the jury on the issue of entrapment as the instruction included the language "he being an otherwise innocent person" in its requirement for the establishment of the defense. Counsel contends the instruction deprived his client of the defense of entrapment since the defendant admitted being in possession of the tablets, the subject of the sale. Consequently, the jury was permitted to conclude the defendant was not an otherwise innocent person as he admitted a collateral offense.

In deciding this point, we observed the jury was admonished the only law they were to consider in deciding the defendant's guilt or innocence was the law included in the court's instructions. Consequently, the court's admonition removed from the jury's consideration any prohibition in the criminal code relating to possession of a stimulant. Coupling the fact the jury

did not have an instruction on possession of a stimulant before it with the weight of Oklahoma authority holding it necessary in the establishment of the defense of entrapment for the defendant to be "an otherwise innocent person" Riddle v. State, Okl.Cr., 374 P.2d 634 (1962) the instruction is not a misstatement of the law. Since the instruction read as a whole is a clear statement of the law and is fair in presenting this defense, the court did not err. Therefore, this proposition is without merit.

■ In the defendant's third proposition defense counsel contends his requested instruction charging the jury with the duty of finding beyond a reasonable doubt the defendant was not entrapped, was improperly excluded. The trial court's first instruction charged the jury with the duty of finding beyond a reasonable doubt the defendant committed all material alleged acts. The nature of the defense of entrapment being an affirmative defense, generally alluding to a negation of the accused's intent to commit the offense, we find the general instruction establishing the jury's duty to find beyond a reasonable doubt the defendant guilty of the offense, adequately charged the jury on the state's burden in this prosecution. We therefore find this proposition to be without merit.

BUSSEY, J., concurs.

BRETT, J., concurring in results.

BRETT, Judge (concurring in results):

It is defendant's first proposition that the trial court erred in failing to direct a verdict in favor of defendant on the grounds that entrapment was established as a matter of law. In support of this contention, defendant cites Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed. 2d 848 (1958), Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), Beasley v. State, Okl.Cr., 282 P.2d 249 (1955), and Striplin v. State, Okl.Cr., 499 P.2d 446 (1972). Defendant only mentions *Striplin* in passing and its dismantlement as the controlling authority does not

leave defendant's proposition without sound legal basis. Even though *Sherman* has not been made binding on the states through the Fourteenth Amendment, it has been cited and followed by this Court previously. Riddle v. State, Okl.Cr., 373 P.2d 832, 842 (1962); Riddle v. State, Okl.Cr., 374 P.2d 634, 639 (1962). If it is the intent of the majority opinion to reject *Sherman* as authority in this jurisdiction, then it follows that our prior decisions resting on *Sherman* have been overruled. Such a result is somewhat perplexing in that we are not advised exactly what rule or reasoning in *Sherman* is inapplicable.

*Sherman* was based on the United States Supreme Court's decision in Sorrells v. United States, *supra*, recognizing the defense of entrapment. The *Sorrells* decision has been expressly recognized and followed by this Court previously. Jones v. State, Okl.Cr., 321 P.2d 432, 441 (1958); Boyd v. State, Okl.Cr., 290 P.2d 160, 167 (1955); Riddle v. State, Okl.Cr., 373 P.2d 832, 842 (1962). The only new aspect to *Sherman* was a finding by the Court that the defense of entrapment had been established as a matter of law thus reversing a narcotics sale conviction even though the jury had been instructed on entrapment.

I agree that the facts of *Sherman* and the instant case are quite different. In *Sherman,* the evidence was undisputed and clearly showed the criminal conduct charged against defendant was the product of the creative activity of law-enforcement officials. In the instant case, the evidence is in dispute and does not clearly show defendant's act was the product of law-enforcement officials. Thus, the trial court did not err in overruling defendant's motion for directed verdict as entrapment was not established as a matter of law. It was a question for the jury. As this Court has previously held where there is a conflict in the testimony, the court does not err in refusing defendant's request for a directed verdict if the question of entrapment is submitted to the jury with proper instructions. Riddle v. State, Okl.Cr., 373 P.2d 832 (1962). Therefore, in my view, it is

not necessary, under the facts of this case, to reject *Striplin, supra,* and *Sherman, supra,* as the majority opinion appears to do, in order to reach the results achieved. I concur in the results reached.