**Dickie HEFNER, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–74–834.**

Court of Criminal Appeals of Oklahoma.

Nov. 6, 1975.

James E. Gotcher, Gotcher, Gotcher & Gotcher, McAlester, for appellant.

Larry Derryberry, Atty. Gen., Michael Jackson, Asst. Atty. Gen., Jim Patton, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

The appellant, Dickie Hefner, hereinafter referred to as defendant, was charged, tried by the trial court after waiving a jury and convicted in the District Court of Okmulgee County, Case No. CRF–73–31, for the crime of Unlawful Delivery of a Dangerous Controlled Drug. Defendant was sentenced to serve a term of two (2) years in the custody and control of the Department of Corrections of the State of Oklahoma. From that judgment and sentence the defendant now appeals.

Briefly stated the evidence adduced at trial is as follows: Dennis Dill testified that on February 18, 1973, he was making narcotics buys for Jack Lay, an agent for the Oklahoma State Bureau of Investigation, and advised the agent that he thought he could make a purchase from the defendant. Lay and Paul Clark searched Dill's car and his person and then gave him $30.-00. The witness then approached the defendant at a Henryetta drive-in and asked him if he had any dime bags of the drug THC. The defendant replied in the affirmative and stated that the witness should meet him in a few minutes at an-

other location. Later the defendant for $30.00 sold him three paper packets containing a white powdery substance which the defendant identified as THC. The witness then drove to a prearranged location where he met Officers Lay and Clark, initialed and dated the evidence and handed it to the officers.

Upon cross-examination the witness testified that a few days earlier he, the defendant and two others were at a cabin near Lake Tenkiller; that he asked the defendant to sell him drugs, but the defendant declined stating something to the effect that he didn't have any. The four then drove Dill's car to Henryetta and during the trip the defendant again declined to sell any drugs. On the way a few marihuana cigarettes were smoked by all, but the witness did not supply same. Dill further testified he got paid for each drug purchase and that he never sold or supplied drugs to other parties.

The State then called Jack Lay who testified that he was an agent for the Oklahoma State Bureau of Investigation and that on the date in question Dill advised that he thought he could make a narcotics purchase from the defendant. Dill's person and vehicle were then searched and he was given $30.00. Dill then proceeded to the In and Out Drive-in in Henryetta and approached an individual in a parked car. The officer followed Dill when he left the drive-in and observed what appeared to be an exchange between Dill and an individual in a vehicle. At a prearranged location Dill gave Lay three small packets containing a white powdery substance. Dill was never out of Lay's sight.

Ronald Clodfelter testified that at the time in question he was a chemist for the Crime Bureau of the State of Oklahoma. He stated that it was his job chemically to analyze material and that upon receipt of the packets he analyzed the contents and found it to be a controlled dangerous substance.

Paul E. Clark, a security officer at Northeastern State College in Tahlequah, then testified to essentially the same facts as Jack Lay.

The first defense witness was Roy Dean Pippin who stated that he had known Dennis Dill since he was fifteen years old. He testified that on a prior occasion Dill had asked him if he would like to "do some LSD with him." The witness replied that he would, and Dill gave him a tablet of LSD for $2.00. On cross-examination Pippin testified that although he had known the defendant for a long time, he had never seen the defendant with any drugs.

The defendant next called Lisa Blade who testified that in February of 1973, she, her husband, the defendant and Dennis Dill were all present in a cabin on the lake in Cherokee County when Dill asked the defendant twice if he would sell him some THC. On both occasions the defendant declined although he had three small packets of some substance. They then got in Dill's car and proceeded to Henryetta. During the trip Dill produced a marihuana cigarette which they all shared. The witness further stated that Dill had testified in a drug violation case against her husband and that the defendant was her brother-in-law.

The defendant next testified in his own behalf stating that he was twenty years old and that he had been living in the cabin on the lake for some time before the 18th of February. The witness testified that before going to the cabin he washed his car and found three packets resembling State's Exhibit No. 2. He stated that he did not know how the packages got in his car, that he had loaned his car to numerous people and that he figured the packets contained drugs. He further testified that while at the cabin Dill saw the packets, asked twice if it was THC and if he would sell it. The defendant declined both times. After the trip from the cabin to Henryetta, the defendant next saw Dill at the In and Out Drive-in when Dill came over and begged the defendant to sell him THC. The defendant stated that he finally went to his grandparent's home, got the packets and

sold them to Dill for $30.00. However, he did not set the price, nor did he know for certain the contents of the packets.

During cross-examination, defendant stated that he was previously convicted of a marihuana violation in Oklahoma. At this time a conference was held before the bench and defense counsel was allowed to present evidence to show that the defendant had received a deferred sentence and that the record had been expunged.

Questioning of the defendant then resumed and he stated that he had no other convictions. He further testified that Dill begged him to sell the drugs and that this continual harassment is what forced him to make the sale. The witness testified that when he was previously asked if he was convicted on a drug charge he did not know the difference between a formal judgment and sentence and a deferred sentence. The defense then rested.

The State then recalled Dennis Dill as a rebuttal witness. He stated that he never sold any drugs to Roy Pippin, that he had no marihuana in his possession on the trip from the lake to Henryetta, that the defendant was the party setting the price of the drugs and that he had previously purchased marihuana from the defendant.

The defendant's first assignment of error urges that the trial court erred in not sustaining a demurrer to the evidence, motion to dismiss and motion for new trial on the ground that the defendant had been entrapped by law enforcement officers. In support of his contention the defendant argues that Dennis Dill on two occasions prior to February 18, 1973, had asked the defendant to sell him THC, that the defendant had declined and that on the date in question the defendant sold the three packets only after Dill had "begged" for them.

■ Upon a thorough examination of the record, it is the opinion of this Court that the evidence does not present facts which require a finding of entrapment as a matter of the law. Dill, acting as a police informant, gave the defendant an opportunity to sell drugs which Dill knew the defendant had in his possession. Dill further testified on rebuttal that he had purchased marihuana from the defendant on a previous occasion. There is conflicting evidence concerning whether the sale of three packets consummated on the 18th of February was coerced by Dill's continual harassment. The resolution of a question of entrapment on controversial evidence is a factual question for the trier of fact. *Kissick v. State,* Okl.Cr., 504 P.2d 889, and *Humphreys v. State,* Okl.Cr., 512 P.2d 197. In the instant case the evidence is in dispute and does not clearly show defendant's act was the product of law enforcement officials. Thus, the trial court did not err in overruling the defendant's demurrer and motions as entrapment was not established as a matter of law. Defendant's first proposition in error is without merit.

The defendant's last assignment of error urges that the trial court erred in allowing the defendant to testify under cross-examination that he had a previous Oklahoma conviction for possession of marihuana when it was apparent that the defendant had taken a deferred sentence and that the record had been expunged. In support of his argument the defendant cites *Belle v. State,* Okl.Cr., 516 P.2d 551, which holds that a deferred sentence under the provisions of 22 O.S. § 991c is not a conviction until such time as the trial court pronounces judgment and sentence. In the instant case the defendant's deferred sentence had been served, the case dismissed, and the record expunged.

■ 63 O.S.1971, § 2–410 reads as follows:

Whenever any person who has not previously been convicted of any offense under this act or under any statute of the United States or of any state relating to narcotic drugs, marihuana, or stimulant, depressant, or hallucinogenic drugs, *pleads guilty to or is found guilty of possession of a controlled dangerous*

*substance under Section 2–402*, the court may, without entering a judgment of guilt and with the consent of such person, defer further proceedings and place him on probation upon such reasonable terms and conditions as it may require including the requirement that such person cooperate in a treatment and rehabilitation program of a state-supported or state-approved facility, if available. Upon violation of a term or condition, the court may enter an adjudication of guilt and proceed as otherwise provided. Upon fulfillment of the terms and conditions, the court shall discharge such person and dismiss the proceedings against him. Discharge and dismissal under this section shall be without court adjudication of guilt and shall not be deemed a conviction for purposes of this section or for purposes of disqualifications or disabilities imposed by law upon conviction of a crime. Discharge and dismissal under this section may occur only once with respect to any person.

Any expunged arrest or conviction shall not thereafter be regarded as an arrest or conviction for purposes of employment, civil rights, or any statute, regulation, license, questionnaire or any other public or private purpose; *provided, that, any such plea of guilty or finding of guilt shall constitute a conviction of the offense for the purpose of this act or any other criminal statute under which the existence of a prior conviction is relevant.* (Emphasis added)

It is apparent from the statute that the only deferred sentence which may be considered a prior conviction for purposes of the Uniform Controlled Dangerous Substance Act, 63 O.S.1971, § 2–101 et seq., or other relevant criminal statutes is a deferred sentence arising out of a plea of guilty or a finding of guilt in a criminal action brought under § 2–402 of said act.

■ The trial in the instant case was held April 16 and 17, 1974, and the transcript of it is silent as to the date defend-ant previously pled guilty to possession of marihuana and the judgment and sentence thereon deferred. No record of any kind was introduced to establish clearly this material date. The defendant testifying from memory thought it was in 1971; his attorney who represented him testified from memory that the date was in May, 1970, then again saying it was either 1970 or 1971.

The statutes referred to became effective as follows: 22 O.S.1971, § 991c, July 14, 1970; and 63 O.S.1971, § 2–410, April 28, 1971. If defendant pled guilty to possession of marihuana and received a deferred sentence subsequent to July 14, 1970, but prior to April 28, 1971, the attempted impeachment of him as a witness was error, but on the other hand if the same occurred subsequent to April 28, 1971, then it was proper to use the plea and deferment for his impeachment.

■ However, it is our opinion if any error was made in this particular, it is harmless. The case was tried before a trial judge who would have been cognizant of the deferred sentence by virtue of having to rule upon a proper objection. The evidence of guilt is reasonably clear and the punishment assessed was the minimum under the law. No substantial right of the defendant was prejudiced in the instant case and the defendant's last assignment of error is without merit.

For all the reasons set out above, it is the opinion of this Court that the judgment and sentence appealed from should be, and the same is hereby affirmed.

BUSSEY, J., concurs.

BRETT, P. J., dissents.

BRETT, Presiding Judge (dissenting):

I agree that in this case the issue of entrapment was not established as a matter of law but presented a question to be determined by the trier of fact. It is my opinion, however, that it was improper to

permit a consideration of the defendant's earlier deferred sentence to enter into that determination. I am unable to say that such improper consideration did not influence the trier of fact to reject the entrapment defense. It is for that reason I dissent.

I do not undertake here to attempt to unravel the twisted contradictions of 63 O.S.1971, § 2–410, which permits for certain purposes the use of an "expunged" record, but it must be pointed out that however that statute is construed, it cannot come to the rescue of the prosecution's case in the instant matter. There is no evidence that defendant's deferred sentence occurred *after* the enactment of Section 2–410, and an application of the harsher consequences of that provision to an *earlier* deferred sentence is constitutionally impermissible. The reason for the uncertainty at trial about the time of the deferred sentence was that the record of that matter had, quite properly, been expunged when the defendant successfully completed his period of probation. The prosecutor in this case was allowed to testify that he had attempted to get a copy of the judgment and sentence in the earlier case and had been told by Judge O. C. Craig of Okfuskee County that nothing was available because the record was expunged.

I cannot agree with that reasoning in the majority opinion which finds any error committed here to be harmless for the reason that the trial judge, sitting as trier of fact, could not have avoided learning of defendant's deferred sentence and probation because it was necessary for him to rule upon the admissibility of that matter. Surely there is a difference between having knowledge of a matter and using that knowledge in making a factual determination. Juries are routinely charged to disregard certain matters, and to avoid permitting them to enter into their determination of the facts.

Neither can I agree, in the face of the entrapment defense, that any error committed here was harmless because the defendant was sentenced to the minimum term of imprisonment because I believe the objectionable evidence may have influenced the finding of guilt.

I would reverse defendant's conviction and remand the case for a new trial.